James W. JONES, Plaintiff,

v.

**FRUCHTREEDEREI HARALD SCHULDT & CO., Defendant.**

**Civ. A. No. 71–475.**

United States District Court,
E. D. Louisiana.

Aug. 20, 1972.

Bruce C. Waltzer, New Orleans, La., Robert O. Homes, Jr., Long Beach, Miss., for plaintiff.

Ronald A. Johnson, J. Barbee Winston, New Orleans, La. (Terriberry, Carroll, Yancey & Farrell, New Orleans, La., of counsel), for defendant.

ALVIN B. RUBIN, District Judge:

The motion in this case tests the reach of federal maritime jurisdiction. Jones, a longshoreman, was injured while working on a pier unloading bananas, as a result of a defect in or negligent operation of shore based equipment temporarily attached to the ship. He seeks to recover for his injuries from the owner of the vessel under general maritime law, and the Admiralty Extension Act, 46 U.S.C. § 740. The complaint sets forth allegations of negligence on the part of the crew of the vessel and unseaworthiness of the vessel itself. The vessel moves for summary judgment and to dismiss for want of jurisdiction.

## I. FACTS

There appears to be no genuine dispute concerning the following facts: at the time of the accident, Jones was employed as a longshoreman by a stevedore, Sea-Land Terminal Corporation, at the Port of Gulfport, Mississippi. The banana unloading facility, which is owned by the port authority, consists of a number of gantries and a series of conveyor belts. The conveyor belts are moved on rollers affixed beneath them.

To unload bananas from a ship, gantries are placed in the holds of the ship and used to lift banana boxes onto a conveyor belt. The boxes then travel along a series of three or four conveyor belts into areas called pier fingers, where they are ultimately loaded into trucks or railroad cars. Control switches, capable of starting and stopping the conveyor belts, are located both on the gantries in the holds and at the pier fingers. On the pier fingers and alongside the conveyor belts there are "stands," on which certain longshoremen are stationed. They are assigned to turn banana boxes from the conveyor belts onto a set of rollers over which the boxes moved immediately into the awaiting vehicles. This was Jones' duty when he was injured.

Some of the banana boxes became jammed on the conveyor belt. The belt was stopped by one of the control switchmen on the pier acting on orders from Young, Jones' immediate supervisor. Jones' arm became entangled in the rollers under the belt. When the boxes were freed, the pier switchman, again on orders of Young, who did not know that Jones' arm had been caught between the rollers in the interim, started the conveyor belts, causing severe injuries to his arm.

## II. NEGLIGENCE

No act of negligence on the part of the owner of the vessel or any member of its crew is alleged. Nor is it contended that any of the longshoremen working aboard the vessel were negligent. Such negligence on the part of a longshoreman would not afford a basis for recovery against the vessel unless it created a condition of unseaworthiness. Usner v. Luckenbach Overseas Corp., et al., 1971, 400 U.S. 494, 91 S.Ct. 514, 27 L.Ed.2d 562. Hence the motion for summary judgment as to any claim for negligence must be granted.

## III. UNSEAWORTHINESS

A claim for injuries to a Sieracki seaman is commonly said to be founded on a warranty of seaworthiness. Gilmore and Black, The Law of Admiralty, ch. III, §§ 3-23 §§ 3-27 (1957). But use of the misnomer "warranty" in describing the claim must not disguise its true nature. It sounds in tort. Although the liability is not founded on fault, but is absolute in nature, it is not a contractual claim but a delictual one.

Federal maritime jurisdiction of a tort claim is based solely on the locality where the accident occurred. Victory Carriers, Inc., et al. v. Law, 1971, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383; Grant Smith-Porter Ship Co. v. Rohde, 1922, 257 U.S. 469, 476, 42 S.Ct. 157, 66 L.Ed. 321; Robinson, Admiralty § 9 (1939). If there is jurisdiction, liability may be determined by the nature of the service in which the claimant was engaged when the accident

occurred. A longshoreman injured while engaged in doing a task historically regarded as work in the service of a ship, such as loading or unloading, has a claim cognizable by federal district courts, Seas Shipping Co., Inc. v. Sieracki (1945) 328 U.S. 878, 66 S.Ct. 1116, 90 L.Ed. 1646.

██ But the claim must still arise within the admiralty jurisdiction; and admiralty lacks competence, in the jurisprudential sense, to deal with claims for torts resulting in injury on land. Victory Carriers, Inc., et al. v. Law, supra; Admiralty Extension Act, 46 U. S.C. § 740. Piers and docks, have always been considered extensions of land for purposes of admiralty jurisdiction. Cleveland Terminal and Valley Railroad Co. v. Cleveland Steamship Co., (1908), 208 U.S. 316, 320, 28 S.Ct. 414, 415, 52 L.Ed. 508.

Whether or not the plaintiff was in the ship's service when injured, his injuries occurred on land.

If his injuries were caused by a vessel, jurisdiction would be conferred by the Admiralty Extension Act, 46 U.S.C. A. § 740. However, the fact that control switches capable of starting and stopping the conveyor were aboard the vessel, is not sufficient to establish jurisdiction even under that Act. For there is no issue of fact here, not even a claim, to suggest that the plaintiff's injuries were caused by the vessel.

When an injury is caused by a vessel or its gear or appurtenances, it is insignificant whether the instrumentality of injury is the ship's usual gear. Gutierrez v. Waterman Steamship Corp., (1963) 373 U.S. 206, 213, 83 S.Ct. 1185, 1190, 10 L.Ed.2d 297. But actual causation of the injuries by the vessel, its crew, or its appurtenances is the real test of the parameters of the Admiralty Extension Act, not potential control by the vessel or crew over the injury causing instrumentality. Gutierrez, supra.

██ In this case the fact that the control switches were placed aboard ship as a safety measure is a mere circum-

stance, not a factor that contributed in any way to the injury. There is neither claim nor evidence that either a "real" or a "constructive" crew member aboard the Angelburg actually saw the plaintiff's plight and could have, but did not, use the control switch to prevent his injuries, or that any such crew member had the duty to look out to prevent such injuries.

If we mistake the undisputed facts, the plaintiff may move for reconsideration by bringing forth depositions or affidavits sufficient to demonstrate the misapprehension. Failing a motion to reconsider within ten days, properly supported, judgment will be entered dismissing the unseaworthiness claim for want of jurisdiction.