476 F.2d 246
 J. R. DAVIS (Estate of J. R. Davis in substitute for and
stead of J. R. Davis, Deceased), Plaintiff-Appellant,
v.
W. BRUNS & COMPANY, Defendant-Third Party
Plaintiff-Appellee, SEALAND TERMINAL CORPORATION,
Third Party Defendant.
James W. JONES, Plaintiff-Appellant,
v.
FRUCHTREEDEREI HARALD, SCHULDT & CO., Defendant-Appellee.
 Nos. 72-2999, 72-3474 Summary Calendar.a
 United States Court of Appeals,
Fifth Circuit.
 March 27, 1973.
 
 Robert O. Homes, Jr., Bruce C. Waltzer, George F. Riess, New Orleans, La., for J. R. Davis.
 Michael K. Clann, Ronald A. Johnson, J. Barbee Winston, New Orleans, La., for W. Bruns & Co.
 Robert O. Homes, Jr., Bruce C. Waltzer, New Orleans, La., for James W. Jones.
 Ronald A. Johnson, J. Barbee Winston, Terriberry, Carroll, Yancey & Farrell, New Orleans, La., for Fruchtreederei Harald, Schuldt & Co.
 Before THORNBERRY, GOLDBERG and RONEY, Circuit Judges.
 GOLDBERG, Circuit Judge:
 
 
 1
 This is a consolidated appeal from the dismissals by summary judgment of two admiralty actions on the ground that federal jurisdiction was lacking in both cases. The parties have stipulated that the operative facts in the two cases are so nearly identical that the appeals may be disposed of together on common briefs. Those facts are not seriously disputed, and the courts below found that the "locality rule" of admiralty law barred the action, i. e., that federal maritime jurisdiction does not reach a longshoreman who was injured while working on a pier unloading bananas where the injury resulted from a defect in or negligent operation of shorebased equipment only temporarily and tenuously "attached" to the ship. Guided by the beacon light of recent Supreme Court pronouncements in this area of the law, we agree that federal jurisdiction is wanting and we affirm.
 
 
 2
 The facts in Jones v. Fruchtreederei Harald, Schuldt & Co. D.C., 347 F.Supp. 853, were found by the trial judge to be as follows:
 
 
 3
 "[A]t the time of the accident, Jones was employed as a longshoreman by a stevedore, Sea-Land Terminal Corporation, at the Port of Gulfport, Mississippi. The banana unloading facility, which is owned by the port authority, consists of a number of gantries and a series of conveyor belts. The conveyor belts are moved on rollers affixed beneath them.
 
 
 4
 "To unload bananas from a ship, gantries are placed in the holds of the ship and used to lift banana boxes onto a conveyor belt. The boxes then travel along a series of three or four conveyor belts into areas called pier fingers, where they are ultimately loaded into trucks or railroad cars. Control switches, capable of starting or stopping the conveyor belts, are located both on the gantries in the holds and at the pier fingers. On the pier fingers and alongside the conveyor belts there are 'stands,' on which certain longshoremen are stationed. They are assigned to turn banana boxes from the conveyor belts onto a set of rollers over which the boxes moved immediately into the awaiting vehicles. This was Jones' duty when he was injured.
 
 
 5
 "Some of the banana boxes became jammed on the conveyor belt. The belt was stopped by one of the control switchmen on the pier acting on orders from Young, Jones' immediate supervisor. Jones' arm became entangled in the rollers under the belt. When the boxes were freed, the pier switchman, again on orders of Young, who did not know that Jones' arm had been caught between the rollers in the interim, started the conveyor belts, causing severe injuries to his arm."
 
 
 6
 E.D.La.1972, 347 F.Supp. 853, 854.
 
 
 7
 The facts in cause no. 72-2999, Davis v. W. Bruns & Co., are very similar. Davis was also employed by the Sea-Land Terminal Corporation, and at the time of his injury Davis was working at the very same banana-unloading facility. The manner in which his injury occurred, however, was somewhat different-Davis was injured when he was struck by boxes of bananas that fell from the conveyor belts.
 
 
 8
 One particularly unusual aspect of this appeal is that throughout this litigation the opposing parties have relied upon precisely the same authority to support their antipodal conclusions regarding the existence of federal maritime jurisdiction. In Victory Carriers, Inc. v. Law, 1971, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383, noted in 50 Texas L.Rev. 1428 (1972), 47 Tulane L.Rev. 183 (1972), the Supreme Court held that federal admiralty jurisdiction does not extend to pier-side accidents caused by a stevedore's pier-based equipment. In so holding, the Court stated,
 
 
 9
 "[T]he amphibious nature of the longshoreman's occupation creates frequent taxonomic problems. In the present case, however, the typical elements of a maritime cause of action are particularly attenuated: respondent Law was not injured by equipment that was part of the ship's usual gear or that was stored on board, the equipment that injured him was in no way attached to the ship, the [equipment that injured him] was not under the control of the ship or its crew, and the accident did not occur aboard ship or on the gangplank."
 
 
 10
 402 U.S. at 213-214, 92 S.Ct. at 426, 30 L.Ed.2d at 392. Appellants cite this language as approving a finding of federal jurisdiction on the facts before us; appellees urge that this language forecloses a finding of federal jurisdiction. The courts below agreed with appellees and therefore dismissed the actions.
 
 
 11
 Appellants' basic argument is that Victory Carriers, Inc. v. Law, supra, supports federal admiralty jurisdiction whenever any one of the four "typical elements of a maritime cause of action" are found to exist and that here appellants can show the existence of two of these elements. See, e. g., Gutierrez v. Waterman S. S. Corp., 1963, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 297 (injury caused by ship's equipment, i. e., defective cargo containers); Alaska S. S. Co. v. Petterson, 1954, 347 U.S. 396, 74 S.Ct 601, 98 L.Ed. 798 (injury aboard ship); Seas Shipping Co. v. Sieracki, 1945, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (injury aboard ship due to defective equipment belonging to ship). Cf. Chagois v. Lykes Bros. S. S. Co., 5 Cir. 1972, 457 F.2d 343 (no maritime jurisdiction where none of the four elements are present). We need not and do not determine which of the factors discussed by the Supreme Court in Victory Carriers, Inc. v. Law, supra, are necessary or sufficient to give a longshoreman a maritime cause of action because we find that none of the factors are present here. Thus, we hold only that federal maritime jurisdiction does not reach a longshoreman injured on the land by shore-based equipment when none of the elements relevant to the locality rule of Victory Carriers, Inc. v. Law are present. See Wagner v. Delta S. S. Lines, Inc., 5 Cir. 1972, 465 F.2d 387; Chagois v. Lykes Bros. S. S. Co., supra.
 
 
 12
 The first "element" that appellants insist is present is "attachment" to the ship of the equipment that caused the injury. This conclusion rests on appellants' assertion that "the banana handling facility was attached to the . . . vessel by two lines running from the end of the facility to eyebolts on the floor of the vessel." Appellees argue that no attachment whatsoever was present,[1] but even assuming that the two guy wires connected the entire unloading facility to the ship, we are unwilling to say that the sort of attachment contemplated by Victory Carriers, Inc. v. Law is present. We think that the Supreme Court obviously intended "attachment" to mean something more than the temporary affixing of steadying wires. The facility here was permanently affixed to the shore, it was not an appurtenance of the ship, and it was never disconnected from the shore.
 
 
 13
 Nor is appellants' argument that a second "element" is present persuasive. Appellants argue that because an electric on-off switch was located on the marine leg of the gantry in the hold of the vessel, the facility was "under the control of the ship or its crew." Again, we are compelled to disagree. The belts here were in every meaningful sense of the word "controlled" only from the shore. Although one switch was indeed aboard the vessel, the control that switch could have exercised over the facility was never utilized, it had no possible connection with the injury under all the allegations, and it remained but a mere potential for control.
 
 
 14
 The rest of appellants' arguments are fully answered by Judge Rubin's wellreasoned opinion below, 347 F.Supp. 853, and we affirm both cases on the basis of that opinion. As the Supreme Court held in Victory Carriers, Inc. v. Law, supra, 404 U.S. at 204, 92 S.Ct. at 420, 30 L.Ed.2d 386-387:
 
 
 15
 "[T]he threshold issue is whether maritime law governs accidents suffered by a longshoreman who is injured on the dock by allegedly defective equipment owned and operated by his stevedore employer. We hold that under the controlling precedents, federal maritime jurisdiction does not govern this accident. Nor, in the absence of congressional guidance, are we now inclined to depart from prior law and extend the reach of federal law to pier-side accidents caused by a stevedore's pier-based equipment."
 
 
 16
 The waters on which pier-side injury actions are required to sail were once troubled and stormy. Indeed, the writer of this opinion originally thought, when writing this Circuit's decision in Victory Carriers, Inc. v. Law, 5 Cir. 1970, 432 F.2d 376, reversed, 1971, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383, that the federal maritime jurisdiction would reach pier-side injuries such as those now before us. The Supreme Court disagreed and declared that view to be offcourse, and it cannot be repeated too often that the Supreme Court's decisional pronouncements constitute the law of the land.
 
 
 17
 The Supreme Court's holding in Victory Carriers, Inc. v. Law spread a pacifying oil that put to rest the argument that the locality of the injury is to be given less than nearly controlling weight.[2] That case must now serve as our compass and our sextant, and its navigational guidance as to the cases before us is clear: Absent any of the enumerated elements that would convert it into a maritime cause of action, the onland location of the accidents erects a blockade against maritime jurisdiction. Appellants would have us return to our holding in Victory Carriers, Inc. v. Law, but our decision there was surveyed from above, and the metes and bounds of similar equipment were found to be landward of maritime jurisdiction, which corrected the error of our prior judicial transit. Federal admiralty jurisdiction does not extend to pier-side accidents caused by a stevedore's pierbased equipment, and appellants must seek shelter in some port other than that established by the maritime jurisdiction.
 
 
 18
 Affirmed.
 
 
 
 a
 Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, 5 Cir. 1970, 431 F.2d 409, Part I
 
 
 [1]
 Appellees insist that there is no physical connection between the banana handling facility and the ship other than a single line that extends from the gantry to a pad eye in the bottom of the vessel. None of the conveyor belts are admitted to be attached to the ship or the maritime portion of the facility; rather, appellees state that there is an open space of approximately three feet between the maritime portion of the facility and the belts that actually injured appellants. The cargo is said to be elevated from the holds and then ejected across this open space. Appellees thus urge that the conveyor belts themselves are entirely affixed to the land and in no way actually attached to the vessel
 
 
 [2]
 In addition to tracing the troubled and sometimes conflicting development of the case law prior to Victory Carriers, Note, 50 Texas L.Rev. 1428 (1972), compiles various arguments "in defense of the locality rule as applied in Victory Carriers."