**John R. NATIONS, Plaintiff-Appellant,**

**v.**

**W. W. MORRIS and American Motorists Insurance Co., Defendants-Appellees.**

**No. 71–3141.**

United States Court of Appeals,
Fifth Circuit.

June 19, 1973.

Certiorari Denied Dec. 3, 1973.
See 94 S.Ct. 584.

Carl J. Barbier, New Orleans, La., for plaintiff-appellant.

Gordon F. Wilson, Jr., Robert E. Leake, Jr., New Orleans, La., for defendants-appellees.

Before JOHN R. BROWN, Chief Judge, and RIVES and CLARK, Circuit Judges.

JOHN R. BROWN, Chief Judge:

After suffering injury through the alleged negligence of a fellow employee on an offshore drilling rig located on the Outer Continental Shelf off the coast of Louisiana Employee-Appellant suffered summary judgment in the District Court through the asserted error of the trial Judge in incorrectly determining that in an action invoking the Louisiana Direct Action Statute [1] (i) the Longshoremen's and Harbor Workers' Act [2] (L & H) was the exclusive remedy for appellant and (ii) L & H's grant of tort immunity to both the employer and the fellow employees of an injured worker (§ 933(i)) [3]

1. The Louisiana Direct Action Statute provides:

"No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect that the insolvency or bankruptcy of the insured shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy, and any judgment which may be rendered against the insured for which the insurer is liable which shall have become executory, shall be deemed prima facie evidence of the insolvency of the insured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person, or his or her survivors mentioned in the Revised Civil Code Article 2315, or heirs against the insurer. The injured person or his or her survivors or heirs hereinabove referred to, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Art. 42, Code of Civil Procedure. This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the State of Louisiana. Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if the same are not in violation of the laws of this State. It is the intent of this Section that any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this State.

It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons, his or her survivors or heirs, to whom the insured is liable; and that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor within the terms and limits of said policy."

LSA–R.S. 22:655 (Supp.1962).

2. 33 U.S.C.A. § 901 et seq.

3. 33 U.S.C.A. § 933(i):

(i) The right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured, or to his eligible survivors or legal representatives if he is killed, by the negligence or wrong of any other person or persons in the same employ: *Provided,* That this provision shall not affect the liability of a person other than an officer or employee of the employer.

The scope of coverage, and immunities therefrom, is dealt with in two other sections. Section 905(a) provides in part:

"The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to

is a non-personal defense which can be maintained by the employer's insurance carrier. We agree with the District Court and hold that he was clearly correct as to both (i) and (ii) and affirm for the further reason that we find the Louisiana Direct Action Statute to be inapplicable to causes of action based upon occurrences on artificial islands or structures on the Continental Shelf.

The facts, which are not disputed, show that Employee was injured while working on an oil drilling platform located some 40 miles from the Louisiana coast in the Gulf of Mexico. Employee was working for Employer (Coral Drilling Company) at the time of the accident as was his co-worker, the defendant, W. W. Morris.[4] Insurer (American Motorist Insurance Company) a defendant due to the Louisiana Direct Action Statute, is the liability and compensation insurer of Employer. American Motorist was thereby the liability insur-

er of Morris under the omnibus provisions of its general liability policy.

### I.

### *Tinkers-To Evers-To Chance*

As Employee cannot ignore the plain language of the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C.A. § 1331 et seq., which expressly prescribes the application of L & H[5] and the exculpatory terms of § 933, note ₂3, *Supra*, his theory is necessarily a complex, if not too sophisticated, one.

First, to export onto International waters, the land-based Louisiana right of an injured employee to sue a fellow employee for injuries caused by negligence of such fellow worker[6] he has to find a way for Louisiana law to apply either extraterritorially or as *Rodrigue*[7] surrogate law. He does that by invoking § 1333(a)(2) of OCSLA which provides that "to the extent that they are applica-

---

recover damages from such employer at law or in admiralty on account of such injury or death * * *."
It was not significantly altered by the 1972 amendments, note 30, *infra*.
Section 903(a) provided, at the time of these injuries, that:
(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. * * *."
This section has been significantly amended, note 19, *infra*.

4. The facts of this case are neatly paralleled in Kirkland v. Shell Oil Co., 5 Cir., 1973, 483 F.2d 590. That case is controlled by what we say here.

5. 43 U.S.C.A. § 1333(c):
Applicability of Longshoremen's and Harbor Workers' Compensation Act; definitions
(c) With respect to disability or death of an employee resulting from an injury occurring as the result of operations described in subsection (b) of this section, compensation shall be payable under the provisions of the Long-

shoremen's and Harbor Workers' Compensation Act. For the purposes of the extension of the provisions of the Longshoremen's and Harbor Workers' Compensation Act under this section—
(1) the term "employee" does not include a master or member of a crew of any vessel, or an officer or employee of the United States or any agency thereof or of any State or foreign government, or of any political subdivision thereof;
(2) the term "employer" means an employer any of whose employees are employed in such operations; and
(3) the term "United States" when used in a geographical sense includes the outer Continental Shelf and artificial islands and fixed structures thereon.

6. Daigle v. Cobb, La.App., 1965, 175 So.2d 392, writ ref'd, 248 La. 363, 178 So.2d 655; Jolly v. Travelers Ins. Co., La. App., 1964, 161 So.2d 354; Travelers Ins. Co. v. Brown, 5 Cir., 1964, 338 F.2d 229; Adams v. Fidelity and Casualty Co. of New York, La.App., 1959, 107 So.2d 496, all interpreting LSA–R.S. 23:1101, the provision of the Louisiana Compensation Act governing suits against third parties.

7. Rodrigue v. Aetna Casualty Co., 1969, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360, 1969 A.M.C. 1082.

ble and not inconsistent with this subchapter or with other Federal laws and regulations" state laws shall be applied as surrogate federal law.[8] To make that leap in the face of § 1333(c) OSCLA and the exculpation of 33 U.S.C.A. § 933(i), he asserts that the occurrence was either in the twilight zone or the concurrent light zone.

All the while, he must be fully aware that L & H, 33 U.S.C.A. § 901 through § 950, provides a comprehensive scheme for determining who shall pay, how much money,[9] after which occurrences, for what duration, to which persons, and provides the machinery for enforcing these determinations. It provides what record keeping practices must be maintained, penalties for failure to follow its requirements and prohibitions, safety rules and regulations for the protection of the workers that it covers and appropriations for its enforcement. The import of this will be—we hope—made clear.

*Not Equal—No Sequel*

The Supreme Court's decision in Southern Pacific Co. v. Jensen, 1917, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086, ruled that state compensation acts could not provide compensation for maritime injuries. In Grant Smith-Porter Ship Co. v. Rohde, 1921, 257 U.S. 469, 42 S.Ct. 157, 66 L.Ed. 321, following closely on the heels of its decision in Western Fuel Co. v. Garcia, 1921, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210, the Supreme Court held that state compensation acts could not compensate maritime injuries unless they were "maritime but local" (257 U.S. at 242, 42 S.Ct. 89). After the enactment of the L & H in 1927 the question of whether there would be compensation under a state act shifted to whether compensation would be state or federal.

In Davis v. Department of Labor, 1942, 317 U.S. 249, 63 S.Ct. 225, 87 L. Ed. 246, 1942 A.M.C. 1653, the Court dealt with a situation where the physical

---

8. 43 U.S.C.A. § 1333(a) in full provides:

(a) (1) The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands and fixed structures which may be erected thereon for the purpose of exploring for, developing, removing, and transporting resources therefrom, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State: *Provided, however,* That mineral leases on the outer Continental Shelf shall be maintained or issued only under the provisions of this subchapter.

(2) To the extent that they are applicable and not inconsistent with this subchapter or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State as of August 7, 1953 are declared to be the law of the United States for that portion of the subsoil and· seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf, and the President shall determine and publish in the Federal Register such projected lines extending seaward and defining each such area. All of such applicable laws shall be administered and enforced by the appropriate officers and courts of the United States. ' State taxation laws shall not apply to the outer Continental Shelf.

(3) The provisions of this section for adoption of State law as the law of the United States shall never be interpreted as a basis for claiming any interest in or jurisdiction on behalf of any State for any purpose over the seabed and subsoil of the outer Continental Shelf, or the property and natural resources thereof or the revenues therefrom.

9. L & H provides for generous benefits. Unlike many state compensation acts L & H provides permanent benefits for permanent total disability. 33 U.S.C.A. § 908. The Act provides for payment of medical expenses—as opposed to disability payments—for a period limited only by the duration of the disability. § 907. These have become even more generous with the 1972 amendments, 86 Stat. 1253 et seq., 33 U.S.C.A. § 908 as amended.

location of an accident created uncertainty as to whether state or L & H compensation would apply. The Court introduced one of those figuratives that may make the problem worse, not easier. It held that in the twilight zone a determination that state compensation was applicable would not be disturbed unless clearly erroneous.[10] Thus, "twilight" began to take on the appearance of an area where either system might operate.

In Calbeck v. Travelers Insurance Co., 1962, 370 U.S. 114, 82 S.Ct. 1196, 8 L. Ed.2d 368, 1962 A.M.C. 1413, the Supreme Court made it clear that there existed an area in which both state and federal compensation systems were competent to provide a remedy. Appellant would have us describe this as a sphere of "concurrent jurisdiction." In *Mike Hooks, Inc.*[11] we referred to it as "the doctrine of the last chance." [12] *Mike Hooks* adequately describes the erratic voyage of the humane compensation remedy through the shoals left by *Jensen, supra.*

*Calbeck* applied the doctrine—whatever its proper appendage—to new construction.[13] And the area of multiple choice remedies extends to injuries sustained in working around marine railways, which, though they are on dry land, are covered by L & H through the specific command of § 902(4), that the L & H shall cover drydocks. Holland v. Harrison Brothers Drydock and Repair Yard, 5 Cir., 1962, 306 F.2d 369, 1963 A.M.C. 1343.[14] The *Holland* Court was not dissuaded from locating the injuries there within the twilight zone by the fact that the injuries occurred on the land appurtenant to the railway, necessarily occupied by those repairing the ship,[15] 306 F.2d at 372, and not on the railway or the barge resting on the railway. Appellant would have us hold that the platform here was such an area of concurrent jurisdiction.

■ The argument is a nice try, but it doesn't work for a number of reasons. This occurrence did not take place within the territorial limits of the state of

10. The *Davis* Court recognized the confusion that its *Jensen* line of decisions had created. In light of this it stated:
"There is, in the light of the cases referred to, clearly a twilight zone in which the employees must have their rights determined case by case, and in which particular facts and circumstances are vital elements. That zone includes persons such as the decedent who are, as a matter of actual administration, in fact protected under the state compensation act.
Faced with this factual problem we must give great—indeed, presumptive—weight to the conclusions of the appropriate federal authorities and to the state statutes themselves."
317 U.S. at 256, 63 S.Ct. at 229.

11. Mike Hooks, Inc. v. Pena, 5 Cir., 1963, 313 F.2d 696, 1963 A.M.C. 355.

12. *Calbeck* held that the acceptance of benefits under the state compensation system did not result in an election of remedies. Perhaps it would be as appropriate to call the doctrine "second chance." We do not intend to founder on the terminology or attempt to predict the future course of the law in this genuinely maritime class of cases, *but see*, note 19, *infra*.

13. The Court had held that state compensation remedies could be applied to new

construction under the "maritime but local" rubric more than forty years before *Calbeck* in Grant Smith-Porter Ship Co. v. Rohde, *supra*.

14. See also, Avondale Marine Ways, Inc. v. Henderson, 1953, 346 U.S. 366, 74 S.Ct. 100, 98 L.Ed. 77, 1953 A.M.C. 1990.

15. The shoreward march of the *Jensen* line seems to have been halted with Nacerima Operating Co., Inc. v. Johnson, 1969, 396 U.S. 212, 90 S.Ct. 347, 24 L.Ed.2d 371, 1969 A.M.C. 1967 which reversed Marine Stevedoring Corp. v. Oosting, 4 Cir., 1968, 398 F.2d 900, 1968 A.M.C. 1125 (grant of L & H benefits to Longshoremen crushed against railroad car or knocked to pier by ships tackle while standing on pier.) The Circuits, including our own, have early on held *Calbeck's* rationale inapplicable to other arguable situations, Travelers Ins. v. Shea, 5 Cir., 1967, 382 F.2d 344, 1969 A.M.C. 1457 (worker on floating outfitting pier permanently moored to bank, engaged in ship repair not covered by L & H); O'Leary v. Puget Sound Bridge and Dry Dock Co., 9 Cir., 1965, 349 F.2d 571, 1965 A.M.C. 2042 (no coverage for injuries occurring on new ship construction on "building way" located on dry land).

Louisiana. The accident occurred far beyond even the wildest claim of territorial sovereignty the state of Louisiana might make. Specifically the accident occurred upon the "Outer Continental Shelf" as that area is characterized and defined by Congressional act.[16] Employee recognizes this but invokes *a la Rodrigue* [17] the surrogate law provision, 43 U.S.C.A. § 1333(a)(2).

In a way our analysis requires, as is often done in jurisdictional quests, that we assume momentarily that Louisiana law applies and would not be inconsistent with OCSLA. On that approach there is neither "maritime but local" nor twilight zone. The injuries were sustained wholly on the drilling platform. Although transported forty or more miles to sea the incident was the parallel of a longshoreman being injured on a permanent pier in a land locked harbor,[18] with no mixture of sea and land.

Here the L & H applies not because the injuries were maritime but not local but because the statute expressly so states. And there can be no twilight where the physical location and the consummation of the injuries were on this Congressional extension of the underlying seabed.

A beguiling argument could be made that by OCSLA's incorporation of L & H Congress gave a mouth-to-mouth-resuscitation to the jurisdictional language launched by *Jensen* to afford federal coverage only where disability or death stems from an injury occurring upon navigable waters, see note 3, *supra,* and recovery for the disability or death through workmen's compensation proceedings might not validly be provided by the adjacent state. However we cannot believe that Congress had any such purpose.[19]

As with numerous overseas military bases Congress knew that in the area of industrial injuries which were bound to occur often in such new and hazardous operations a specific code for adequate compensation benefits for employees *vis-a-vis* employers had to be ordained. Several factors pointed directly toward the rejection of any notion that this could be attained through a sometime application of adjacent state compensation laws. First was an awareness that the case by case post-*Jensen* history had not been an inspiring one. Next, as we

---

16. 43 U.S.C.A. § 1331 et seq.

17. Note 7, *supra.*

18. Of course a *Sieracki* seaman, Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, 1946 A.M.C. 698, may recover for some land based injuries, Gutierrez v. Waterman Steamship Corp., 1963, 373 U.S. 206, 83 S.Ct. 1185, 10 L.Ed.2d 296, 1963 A.M.C. 1649; Burrage v. Flota Marcante Grancolumbiana S.A., 5 Cir., 1970, 431 F.2d 1229, 1970 A.M.C. 2254, *but see*, Law v. Victory Carriers, Inc., 1971, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383, 1972 A.M.C. 1, and Davis v. W. Burns & Co., 5 Cir., 1973, 473 F.2d 246, 1973 A.M.C. 1148. But this is not a *Sieracki* seaman suing a shipowner as a third party. Here it is an action against his own employer although in the form of a suit against a fellow employee.

Indeed, this is a distinguishing element in *Rodrigue*. In a third party suit the Court incorporated Louisiana substantive law on damages recoverable for death. But L & H admittedly did not apply to any extent as between the plaintiffs and the third party defendants. Here all three—employee, employer and fellow employee—were all covered by L & H.

19. The 1972 amendments completely eradicate the "only if * * * etc." language from § 903(a). The section now reads in pertinent part:

"(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel)." 86 Stat. 1251, 1265, (1972).

Obviously some important cases will be affected by this enactment.

pointed out in *Snipes,* note 29, *infra,* OCSLA prescribes federal standards for industrial safety to be promulgated and enforced by the "head of the Department in which the Coast Guard is operating." [20] (Domestic employers under the L & H are regulated with regard to safety practices by the Secretary of Labor.) [21]

Even more significant in construction of the act is the fact that OCSLA, in its incorporation of L & H, did not speak in terms of injuries occurring *on* such platforms so as to distinguish them from those *off* the platforms. The incorporation, § 1333(c), note 5, *supra,* refers to "operations described in subsection (b)" which thereby incorporates the broad scheme of § 1333(b).[22] Obviously Congress purposefully established a system that would apply without regard to physical location.

To cap it off, ever since *Calbeck* the proviso of § 903(a) has had little or no operative effect with respect to occurrences within the legislatively described sphere. There it was an injury occurring on navigable waters (in connection with the building of a new vessel). Here the physical operation covered is that of § 1333(b) OCSLA, note 22, *supra,* which pertains to injuries (i) on the platform or (ii) in connection with the exploration for or exploitation and removal of the natural resources of the Outer Continental Shelf. And for the Outer

Continental Shelf Congress faced no *Jensen*-like constitutional problems. When OCSLA was enacted the national government's "paramount jurisdiction" [23] had already been declared by the decision which sparked the years-on-end effort to salvage something for the adjacent states in the tidelands. Congress was unfettered. Deference to adjacent states was for practical, not constitutional reasons.

L & H applies during the dark of night, at the break of dawn and in the twilight too. And it would be a mistake to find a new twilight zone which surrounds the United States at a distance beyond a marine league from its shores. Twilight by its definition is a time when it is difficult to see. For this limited problem the shorelines of our nation and their relation to federal and state jurisdiction are already obscure enough without our producing a new fog bank to prolong, intensify or increase the dimensions of the reduced visability. We can hope that the 1972 amendments to § 903(a) will burn away the fog. *Cf.,* note 19, *supra.*

Although this is no *Erie* pursuit we find assurance in Louisiana's rejection of one-if-by-land, two-if-by-sea. For the Louisiana courts have held that their Workmen's Compensation Act is not applicable to the Outer Continental Shelf and specifically the fixed platforms on the Outer Continental Shelf.[24]

---

20. 43 U.S.C.A. § 1333(e)(1) provides:

(e)(1) The head of the Department in which the Coast Guard is operating shall have authority to promulgate and enforce such reasonable regulations with respect to lights and other warning devices, safety equipment, and other matters relating to the promotion of safety of life and property on the islands and structures referred to in subsection (a) of this section or on the waters adjacent thereto, as he may deem necessary.

21. 33 U.S.C.A. § 941.

22. § 1333(b):

Jurisdiction of United States district courts

(b) The United States district courts shall have original jurisdiction of cases and controversies arising out of or in

connection with any operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing or transporting by pipeline the natural resources, or involving rights to the natural resources of the subsoil and seabed of the outer Continental Shelf, and proceedings with respect to any such case or controversy may be instituted in the judicial district in which any defendant resides or may be found, or in the judicial district of the adjacent State nearest the place where the cause of action arose.

23. United States v. California, 1947, 332 U.S. 19 at 39, 67 S.Ct. 1658, 91 L.Ed. 1889, 1947 A.M.C. 1579.

24. In Strange v. Fidelity & Casualty Company of New York, La.App., 1972,

*Not Surrogate*

■■ Employee's contention that the Louisiana Workmen's Compensation Act with its freedom to sue fellow employees is "applicable" as surrogate federal law is too frail a craft to venture to the Outer Continental Shelf. OCSLA declares, § 1333(a)(2), that the laws of the adjacent state shall apply "[t]o the extent that they are applicable and not inconsistent," note 8, *supra,* and Rodrigue v. Aetna Casualty Co., 1969, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360, 1969 A. M.C. 1082, has charted our course in this area. As we said in *Continental Oil Co.,*[25] the recurring theme of *Rodrigue* "requires that 'applicable' be read in terms of necessity—necessity to fill a significant void or gap."[26] L & H is clearly a sufficient system and its provisions as to the liability of fellow employees must—along with the entire remainder of L & H—be the law for workers injured in connection with operations involving removal or development of natural resources from the Outer Continental Shelf.

For the purposes of this case on the question of what Workmen's Compensation Statute should be applied *Rodrigue* means that there must exist a gap before state law can be applicable. In light of the specific adoption of L & H to cover maritime, non-maritime or ambiguous amphibious claims for injuries to employees *Rodrigue* does not either suggest or require that because of the non-maritime nature of the claim adjacent state law is to be employed.[27]

And what we conclude today on fresh examination of the statutes and historical background follows our previous holdings, whatever remains of Huson v. Otis Engineering Corp., 5 Cir., 1970, 430 F.2d 27, 1970 A.M.C. 1978,[28] after its

---

262 So.2d 799, 800 the plaintiff sought benefits for injuries received on a drilling platform located beyond a marine league from the Louisiana coast. The Court of Appeal of Louisiana stated "under these facts plaintiff's exclusive remedy is under the federal Longshoremen's and Harbor Workers' Compensation Act. He cannot recover under the Workmen's Compensation Act of the state of Louisiana." The Court cited Crooks v. American Mutual Liability Insurance Company, La. App., 1965, 175 So.2d 875 in which the Supreme Court of Louisiana refused a writ, 248 La. 372, 178 So.2d 659, with a notation "no error of law in the judgment in the Court of Appeal," cert. denied, 384 U.S. 945, 86 S.Ct. 1470, 16 L.Ed.2d 542.

Candor requires acknowledgment that this view has been severely criticized by then Judge, now Justice Tate in his concurrence in *Crooks,* an opinion he felt grudgingly obliged to join.

25. Continental Oil Company v. London Steam-Ship Owner's Mutual Insurance Asso. Ltd., 5 Cir., 1969, 417 F.2d 1030, 1034, 1969 A.M.C. 1882, cert. denied, 397 U.S. 911, 90 S.Ct. 911, 25 L.Ed.2d 92.

26. 417 F.2d 1036. See note 41, *infra.*

27. Nothing said in Executive Jet Aviation, Inc. v. City of Cleveland, 1972, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 545, 1973 A.M.C. 1, weakens our conclusion. But some may suspect that the Court's use of *Rodrigue* (see 409 U.S. at 258, 259, 93 S.Ct. 493) may have significant bearing on whether activities which up to *Executive Jet* satisfied the admiralty locality test are any longer maritime or will give rise to maritime jurisdiction or substantive principles.

28. In *Huson* we said:

"10. For precedential buoyancy *Snipes, supra,* is probably way below her Plimsoll marks even though the Court's reference is an oblique footnote "cf" in note 9, 395 U.S. 363, 89 S.Ct. 1841, 23 L.Ed.2d 368.

It may be ironic, however, that in this third party situation of a suit by the employee of an independent service contractor against the owner-operator of the fixed platform rig, the rights *vis-a-vis* employee and employer (Otis) are fixed, not by the Louisiana Compensation Act, but by the Longshoremen's and Harbor Workers' Act, 33 U. S.C.A. § 901 et seq. See 43 U.S.C.A. § 1333(c). This includes specifically the provisions relating to third party suits, 33 U.S.C.A. § 933, which are quite different from those under LSA–R.S. 23:1101 (See note 6, Fidelity & Casualty Co. of New York v. C/B Mr. Kim, 5 Cir. 1965, 345 F.2d 45, 49, 1965 A.M.C. 1944) which ties third party subrogation recovery to the employee's rights, unlike the broader basis under

partial affirmance and remand, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296, 1972 A. M.C. 20 and *Rodrigue's* rejection of our earlier prediction in *Snipes* [29] which dealt with adoption or non-adoption of adjacent state law in third party situations. We are firm in the view that as between employee and employer (or fellow employee) L & H is the sole measure and this excludes a land based damage action against the fellow employee.

## II.

### Civil Law—The In Solido Doctrine and L & H Immunity

Undaunted by our refusal to construe OCSLA and L & H to his satisfaction Employee now turns to the Louisiana law. He asks us to make another big leap, this time from the Outer Continental Shelf to the Civil Law of Louisiana.

### Inherent Or Personal Defense?

Even though L & H is employee's exclusive compensation remedy and it provides that fellow servants of an injured employee are exonerated from liability and that no remedy exists against them,[30] Employee contends that under the Louisiana Direct Action Statute,[31] and Codal Art. 2098 [32] of the Louisiana Civil Code Insurer is liable. The Direct Action Statute provides that the insurer and the assured are debtors *"in solido"* which brings into play Art. 2098 which

the Longshoremen's Act, see, e. g., Federal Marine Terminals, Inc. v. Burnside Shipping Co., 1969, 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371, 1970 A.M.C. 251. Apportionment of the burden of litigation and distribution of recoveries may also be different. See, e. g., Strachan Shipping Co. v. Melvin, 1964, 5 Cir., 327 F.2d 83, 1964 A.M.C. 288 (dissenting opinion); Haynes v. Rederi A/S Aladdin, 1966, 5 Cir., 362 F.2d 345, 350–351, 1966 A.M.C. 2024, cert. denied, 1967, 385 U.S. 1020, 87 S.Ct. 731, 17 L. Ed.2d 557. Likewise, in the so-called Louisiana law third party suit the real "substantive" standards of conduct, performance, negligence, etc. will to a great extent be "federal" because of mandated Coast Guard Safety Regulations (43 U.S.C.A. § 1333(e)(1)) which have the force of federal law. See, e. g., Manning v. M/V "Sea Road," 1969, 5 Cir., 417 F.2d 603, 1970 A.M.C. 145.
430 F.2d at 29.
To this we can now add the current efforts to deal with apportionment of third party recovery under L & H and Cf. Chouest v. A & P Boat Rentals, Inc., 5 Cir., 1973, 472 F.2d 1026, 1973 A.M.C. 1542.

29. Pure Oil Co. v. Snipes, 5 Cir., 1961, 293 F.2d 60, 1961 A.M.C. 1651, note our treatment of it in note 10 of *Huson, Id.*

30. 33 U.S.C.A. § 905 provides that the Longshoremen's and Harbor Workers' Act is the exclusive liability of the employer. Amendments to the act in 1972 brought about significant changes in the Longshoremen's remedies against vessels for negligence and unseaworthiness. These do not affect the employers exclusive liability to pay compensation under the act.

§ 905(b) as amended by 86 Stat. 1263 (1972) takes away from longshoremen a cause of action based on (i) unseaworthiness, (ii) negligence of any stevedore if the injured longshoreman was employed by the ship, (iii) negligence of a fellow shipbuilder or repairer if the injured party is a ship builder or repairer.
WWLP indemnities by contract or operation of law are likewise banned.
The Senate committee on Labor & Public Welfare reported "that especially with the vast improvement in compensation benefits which the bill would provide, there is no compelling reason to continue to require vessels to assume what amounts to absolute liability for injuries which occur to longshoremen or other workers covered under the Act who are injured while working on those vessels." Senate Report No. 92–1125, Sept. 14, 1972 at 9.
This highlights the importance of our present holding. Were we to sanction invoking the Louisiana Compensation Act these express Congressional exculpations could be effectively bypassed. Warranties of *Sieracki-Ryan-Yaka* seaworthiness, WWLP and the like would be available on, over, around and under the high seas, or in domestic waters if on the *Jensen-Calbeck-Nacerima* syndrome one could confect a theory that plausibly permits resort to state, rather than L & H compensation law.

31. See note 1, *supra.*

32. The Code Provides:
"Art. 2098. Defenses available to debtors in solido
Art. 2098. A codebtor *in solido*, being sued by the creditor, may plead all the exceptions resulting from the nature of the obligation, and all such as are per-

provides that defenses which are personal to a debtor *in solido* cannot be asserted by his co-debtor. The upshot of this in Employee's eyes is that the freedom of the fellow employee from liability provided by 33 U.S.C.A. § 933(i) is personal to that fellow employee and is no defense to the employee's liability insurer for its vicarious liability under the Direct Action Statute.

If the defense inheres in the nature of the obligation then Insurers have Employers fellow-employees §§ 905, 933(i) absolute exculpation. If not, Insurer has the vicarious liability if—and the if is a giant one—the Direct Action Statute jumps from shore to the Outer Continental Shelf.

■ We have twice dealt with this quaint Codal provision concerning defenses resulting "from the nature of the obligation." In *Nebel Towing*[33] this Court held that the shipowner's Limitation of Liability Act[34] was a personal defense and that shipowner's insurer could be forced to pay the full damages even though no personal judgment could be taken against the assured shipowner beyond the limited value in the "vessel and her freight then pending." Accepting this as the controlling law, there is nothing in that case that requires or suggests that we hold that the absolute tort immunity between an injured employee and his employer and fellow employees is a personal defense not inhering in the nature of the obligation. As the Court there emphasized it is the shipowner *alone* who can limit. This is

a peculiar statutory defense which seldom has anything to do with the underlying liabilities *vis-a-vis* the parties. Except for the procedural concursus the right to limit comes long after the event. It does not obliterate the right. Under L & H the liability of employer and fellow employee which is insulated by §§ 905, 933(i) is that arising from the nature of the relationship of the parties under pertinent law (maritime or common) had exculpation not been granted. In *Nebel* we held the statutory right to limit was personal, but we came nowhere close to fellow servant liability.

Indeed *Nebel* was a prescient forecast of our holding. To the contention that treating the right to limit as personal would compel the result sought here under L & H, we stated:

> "The appellant's attempt to analogize the limitation act to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. (1964), must fail. Since the Longshoremen's Act destroys the right to relief outside the statutory coverage, it would follow that a claimant could not proceed against the insurer on a non-existent right to relief. The Limitation Act merely provides a specific benefit to shipowners; it does not destroy the right to relief."[35]

■ Sections 905(a) and 933(i) of L & H completely obliterates the rights at common, civil or maritime law against Employer and fellow employee. Congress in its unlimited power has determined that the relationship gives rise

---

sonal to himself, as well as such as are common to all the codebtors.

He can not plead such exceptions as are merely personal to some of the other codebtors."

L.S.A.–C.C. Art. 2098 (1952).

See the following articles for a full explanation of the meaning of *"debtor in solido"*: Comment, XXV Tulane Law Review 217; and Comment, XIV Louisiana Law Review 828.

33. Olympic Towing Corp. v. Nebel Towing Co., 5 Cir., 1969, 419 F.2d 230, 1969 A.M.C. 1571 (denial of rehearing en banc

and dissent at 238), cert. denied, 397 U.S. 989, 90 S.Ct. 1120, 25 L.Ed.2d 396.

34. The pertinent portion of the limitation act provides:

"The liability of the owner of any vessel * * * for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners shall not * * * exceed the amount or value of the interest of such owner in such vessel, and her freight then pending."

46 U.S.C. § 183(a)

35. 419 F.2d at 238, note 33, *supra*.

only to compensation liabilities. The nature of the obligation is that there is no —the word is *no*—obligation.[36]

But *Nebel* not only does not compel the Louisiana rule sought. It does not stand alone as authority on the proposition. In Alcoa Steamship Company v. Charles Ferran and Company, 5 Cir., 1971, 443 F.2d 250, 1971 A.M.C. 1161 we held that the Red Letter Clause of a ship repair contract which limited liability of ship repairer to $300,000 was a defense which inhered in the nature of the obligation. We emphasized that the contract set forth the scheme of obligations, liabilities and created the relationships between the parties.[37] In this case the relationship between the parties is contractual in the sense of the relationship of master-servant and fellow servant. And it is on that relationship and congressional awareness of the certainty of frequent and serious industrial injuries that it has mandated a structure in emphatic terms.

▮ L & H is comprehensive. It has adjusted and rearranged the rights of maritime and other specifically covered workers. We could not hold that the L & H merely cut off the remedy against the fellow employee and that since the amendment in 1959 there has subsisted a remedy-less right against the co-worker which had no utility until the passage of the Direct Action Statute and OCSLA with its surrogate out-reach. We think that the comprehensive scheme known as the Longshoremen's and Harbor Workers' Act is the *whole* source of rights and remedies.[38]

---

36. This is consistent with the Louisiana decisions on the vicarious liability of insurers. See *Nebel* (dissent from denial of rehearing en banc), note 33, *supra*.

The Courts of Louisiana and this Court have repeatedly stressed the proposition that it is the underlying liability of the assured, not the liability of the insurer, which is to be determined. If that liability, once determined in a direct action against the insurer, is within the coverage of the policy, then the underwriter has a direct responsibility. But even though it is covered, the liability of the insurer is restricted to that afforded by the insurance contract, with only one exception of moment here —the "No Action" clauses are ineffectual.

For example, in Finn v. Employers' Liability Assurance Corp., La.App., 1962, 141 So.2d 852, 864, the Court states:

"Nor do we find any merit in the contention that the direct-action statute created separate or distinct causes of action, one against the insurer alone and another against the insurer and the insured. The statute is remedial in character, rather than substantive, and does not create causes of action."

Similarly in Mock v. Maryland Casualty Co., La.App., 1942, 6 So.2d 199, 201–202, the Court declared:

"The statute merely affords a remedy and permits a direct action not under any theory that by the contract of insurance any right is created in plaintiff against the insurer but merely on the ground that, by the tort, rights are created which are permitted to be asserted directly against the insurer of the party at fault."

All of our cases sound the same note. We emphasize this in Ex Parte Tokio Marine & Fire Ins. Co., 5 Cir., 1963, 322 F.2d 113, 116:

"And we are now clear that the direct action insurer stands as a party-litigant in exactly the same shoes as the assured."

We phrased it this way in Degelos v. Fidelity & Casualty Co., 5 Cir., 1963, 313 F.2d 809, 815:

"Under the Direct Action Statute, the case may proceed against the insurer, but liability depends on legal liability of the assured. Whether, as the Act permits, the assured is joined with the insurer, the standard for recovery is identical."

37. In Alcoa Steamship, *supra*, we said:

"Whatever else might be said by the protagonists about *Nebel Towing*, or what else it may portend, neither our holding therein that the statutory limitation of shipowner's liability is a defense personal to the assured shipowner nor the elucidation of it, transfers to a contractual limitation [here we might read in statutory limitation], contained in the agreement which is the principle (if not whole) source of rights and obligations."

443 F.2d at 253.

38. In resolving *Alcoa*, *supra* we examined all of the Louisiana and even the French

And in construing this Codal language we arrive at the same result as do the Louisiana courts. In Dandridge v. Fidelity and Casualty Co., La.App., 1939, 192 So. 887, the court faced the question of whether the defense of the employer granted by the workmen's compensation act was "inherent in the nature of the obligation" and thus could be asserted by the liability insurer. The Court of Appeal held that it could.

### III.

#### Unnecessary—Hence Inapplicable

In Continental Oil Company, supra, we held the Louisiana Direct Action Statute, note 1, supra, to be inapplicable to a collision between a vessel and a fixed platform on the outer continental shelf. On reasoning that since Rodrigue was stated not only in terms of applicable, meaning not inconsistent, but also in terms of applicable—meaning necessary to fill some gap in federal law—we ruled that the Direct Action Statute was unnecessary and hence inapplicable. Since that case was clearly a maritime claim under the Extension of Admiralty Jurisdiction Act [39] and the maritime law provided a comprehensive body of law including rights, remedies and procedures for their enforcement the Direct Action Statute was unnecessary as there was no gap.

Here there is no gap—not even a tiny one. L & H is complete and self-sufficient. It affords specific rights by imposing specific responsibilities. In return for sometimes awesome obligations it extends to the employer and fellow employees an absolute civil immunity. Under a scheme of permissible underwriting of the employer's sweeping obligations—as directed by L & H § 935—there is an effectuation of the congressional scheme. There is no need to impose outside state oriented obligations on the insurer—especially in a sophisticated world, that has to be aware that in the long run it is the employer who pays the fare.[40]

More than that, in this structure, to allow these claims would inevitably reflect on the employers claims loss record, thus, to permit enforcement of the Direct Action Statute would be inconsistent with federal law.[41]

authorities in the annotations to Art. 2098 and none suggested, there or here, a different reading of the code, 443 F.2d at 253.

39. 46 U.S.C.A. § 740.

40. In the 1972 amendments to L & H, note 30, supra, in prohibiting indemnity claims by vessel against stevedore though nominally against insurers, Congress recognized that Ryan indemnities, Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corporation, 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, 1956 A.M.C. 9, are paid by the employer-contractor.

41. We said in Continental Oil that:

"On such reading the necessity for state law (in the sense of a right being lost in its absence) is not the significant factor. State law becomes merely a matter of affording some gain or benefit or advantage not available if state law can not be invoked. Such a reading, of course, puts almost 100% emphasis on the "not inconsistent * * * with federal laws" element of § 1333(a)(2)—a problem which the platform owners circumnavigate by not only moving the Louisiana law out to sea but moving the occurrence back into Louisiana as though it had taken place on inland waters. That is a lot of fictionalizing. And in more austere words it imputes to Congress the purpose generally to export the whole body of adjacent law onto the Outer Continental Shelf for automatic application to any and all occurrences unless—with the unless being limited to (a) specific provisions within the Act or (b) inconsistent federal law. By whatever characterization expressed, in determining what law is to govern, that approach accords initially a superiority to adjacent state law— the question of federal law comes into play only after this process excludes state law. This is hardly in keeping with the course of legislative history in which the notion of supremacy of state law administered by state agencies was expressly rejected.

Keeping in mind that the tidelands controversy had deep political and emotional currents centered around the clash between national sovereignty and

*Rodrigue* has made it clear that maritime principles are inapplicable to injuries occurring to oil workers on the Outer Continental Shelf. However, we have just as comprehensive a body of law to regulate the liabilities of those who injure oil workers as the court had in *Continental* to regulate collisions of ships with platforms. Clearly the Longshoremen's and Harbor Workers' Act is a complete body of law, a legislative island unto itself. There is no need to bring aboard the state Direct Action Statute to cause liability to be fixed where Congress never intended it.

Affirmed.[42]

states' rights—a dispute in which geography separated the adversaries as inland states sought compensating advantages to offset those claimed by coastal states as historically and exclusively theirs—the deliberate choice of federal law, federally administered, requires that "applicable" be read in terms of necessity—necessity to fill a significant void or gap.

This is the recurring theme of *Rodrigue*. Thus, early in the opinion the Court states since "Federal law, because of its limited function in a federal system, might be inadequate to

cope with the full range of potential legal problems, the Act supplemented *gaps* in the federal law with state law through the 'adoption of State law as the law of the United States'." 395 U.S. at 357, 89 S.Ct. at 1838, 23 L.Ed. 2d at 365 (emphasis added).

42. As a postlogue we note our Court's recent brief *per curiam* holding in Da'Ville v. Wise, 5 Cir., 1973, 470 F.2d 1364, 1973 A.M.C. 508, cert. filed, 41 U.S.L.W. 3620, May 22, 1973, reaching the same conclusion on exclusivity of L & H that we reached in Part I, *supra*.