**Richard S. KOESLER**

v.

**HARVEY APPLICATORS, INC. and Commercial Union Assurance Company.**

**Civ. A. No. 75–2238.**

United States District Court,
E. D. Louisiana.

May 26, 1976.

Frederick J. Gisevius, Jr., David E. Caruso, Jr., New Orleans, La., for plaintiff.

Bert M. Cass, Jr., New Orleans, La., for defendants.

ALVIN B. RUBIN, District Judge:

An insurance company, by motion for a summary judgment, contends that a direct action may not be brought against the liability insurer of a company conducting operations on a drilling platform located on the Outer Continental Shelf, for injuries allegedly sustained by negligence in those operations. Most of the currents of decision would carry the court toward the conclusion that such an action lies; the cross currents of controlling contrary decisions by the Fifth Circuit Court of Appeals in *Nations v. Morris*, 5th Cir. 1973, 483 F.2d 577, and in *Continental Oil Co. v. London Steam Shipowners' Mutual Ins. Ass'n, Ltd.,* 5th Cir. 1969, 417 F.2d 1030, compel a different course and require that the action be dismissed. That much should be enough; but hope that the Fifth Circuit may see fit to reconsider and restore the uniformity of the flow of its decisions impels further discussion. Cross currents are difficult for lawyers and nisi prius judges as well as navigators.

The plaintiff, Richard Koesler, was employed by Harvey Applicators, Inc., as a sandblaster. He worked on fixed platforms on the Outer Continental Shelf and on a vessel, the Blue Marlin II. He was injured while working on a fixed platform, and brought this suit under the Jones Act, 46 U.S.C. § 688, against his employer.[1] He also joined Commercial Union Assurance Company, Harvey Applicator's insurer, as a defendant, contending that the Louisiana direct action statute, La.R.S. 22:655[2] is applicable. The insurer then filed this motion

---

1. The defendants filed a motion for summary judgment, claiming that the plaintiff was not a Jones Act seaman. As different inferences as to his status could be drawn from the undisputed facts, the court denied the motion. For the purposes of this opinion, it is assumed that the plaintiff is a seaman and entitled to sue his employer under the Jones Act. If not covered by the Jones Act, his sole remedy against these

defendants is under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–33. 43 U.S.C. § 1333.

2. The statute provides:

No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect that the insolvency or bankruptcy of the insured shall

for summary judgment claiming that the decisions of the Fifth Circuit preclude the application of the direct action statute to a case involving an injury on a fixed platform on the Outer Continental Shelf even though the cause of action is based on the Jones Act.

The relationships between the maritime law, the Louisiana direct action statute, and the Outer Continental Shelf Lands Act, 43 U.S.C. §§ 1331 et seq., have been difficult to establish. We start with the Supreme Court case from which all voyages in this area must begin, *Maryland Casualty Co. v. Cushing*, 1954, 347 U.S. 409, 74 S.Ct. 608, 98 L.Ed. 806. Five seamen had been killed when a towboat collided with a bridge in Louisiana territorial waters. The owner and charterer petitioned for limitation; the representatives of the decedents brought actions in the same court against the insurance company under the Louisiana statute. The Supreme Court then attempted to reconcile the Limitation Act, 46 U.S.C. § 183, and the direct action statute, but "found itself . . . hopelessly divided." [3]

Four members of the Court, through Justice Frankfurter, would have dismissed the direct actions, finding the direct action statute to be a "disturbing intrusion by a State on the harmony and uniformity of one aspect of maritime law." 347 U.S. at 422, 74 S.Ct. at 615. Four other members of the Court, through Justice Black, found no conflict between the direct action statute and the Limitation Act, and would have allowed both suits to proceed concurrently. Justice Clark, the ninth member of the Court, supplied a way out of the impasse: stay the actions against the insurance company until the limitation proceeding had been concluded.

Fifteen years later, the Fifth Circuit faced the question that had been presented but not resolved in *Cushing*. In *Olympic Towing Corp. v. Nebel Towing Co.*, 5th Cir. 1969, 419 F.2d 230, the court held that the direct action statute is not incompatible with the Limitation Act, and that the insurer cannot claim the benefit of limitation. Although the opinion does not say in haec verba that the direct action statute does not disrupt the required uniformity of the general maritime law as promulgated by the federal courts, this conclusion is implicit.

Both *Cushing* and *Olympic Towing* involved episodes that happened in Louisiana territorial waters; it might be argued that

not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy, and any judgment which may be rendered against the insured for which the insurer is liable which shall have become executory, shall be deemed prima facie evidence of the insolvency of the insured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person, or his or her survivors mentioned in Revised Civil Code Article 2315, or heirs against the insurer. The injured person or his or her survivors or heirs hereinabove referred to, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Art. 42, Code of Civil Procedure. This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the State of Louisiana. Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if the same are not in violation of the laws of this State. It is the intent of this Section that any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this State.

It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons, his or her survivors or heirs, to whom the insured is liable; and that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tort-feasor within the terms and limits of said policy.

3. Gilmore & Black, The Law of Admiralty § 10–31 at 908 (2d ed. 1975).

state legislative competence ends at the three mile limit. The primary case allowing state regulation of maritime insurance over claims that federal law preempts the field arose on a small lake between Texas and Oklahoma. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 1955, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337. Justice Frankfurter's concurrence suggested that state regulation should not be extended if the insurance contracts or the loss incurred involve international waters. See also *Irwin v. Eagle Star Ins. Co.*, 5th Cir. 1972, 455 F.2d 827. However, this concept of territoriality seems inconsistent with the mainstream of admiralty jurisprudence; jurisdiction over maritime contracts has been traditionally determined by subject matter, not locality, *DeLovio v. Boit*, C.C.D.Mass.1815, 7 Fed. Cas. 418, No. 3776; and the *infra corpus comitatus* limitation on the jurisdiction was rejected early in the history of the American admiralty. *The Thomas Jefferson*, 1825, 23 U.S. (10 Wheat.) 428, 6 L.Ed. 358. Therefore, in *Sassoni v. Savoie*, E.D.La. 1971, 327 F.Supp. 474, this court permitted the application of the direct action statute to an injury arising beyond the territorial waters of the state. That opinion reflected the conclusion that the uniformity of admiralty law was as important on inland navigable waters as on the high seas. That coherence was not disrupted if direct actions were allowed in maritime tort cases arising on inland waters; neither would the pattern of admiralty law be disturbed by allowing the action where the event occurred on the high seas.

Therefore, if Koesler had been injured on a vessel, whether in Louisiana territorial waters (*Olympic Towing*) or on the high seas (*Sassoni*), he could invoke the Louisiana direct action statute provided that the policy had been written or delivered in Louisiana.[4]

■ These principles are equally applicable if the injured plaintiff is a Jones Act seaman who, in the course of his duties, is injured on state soil. The Jones Act and the relationship of a seaman to his employer have been held to be sufficient to extend admiralty jurisdiction both to claims under the Jones Act and to claims for maintenance and cure even though the injury occurs on land. *Aguilar v. Standard Oil Co. of New Jersey*, 1943, 318 U.S. 724, 63 S.Ct. 930, 87 L.Ed. 1107; *O'Donnell v. Great Lakes Dredge & Dock Co.*, 1943, 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596. Since a Jones Act claim by a seaman is within the admiralty jurisdiction, whether the injury occurs on a vessel or on land, it should follow that the same rules of law should apply without regard to where the injury occurred. Thus, the direct action statute should be applicable to all Jones Act claims, wherever occurring. See *Vincent v. Harvey Well Service*, 5th Cir. 1971, 441 F.2d 146.

That the injury occurred on a platform would not appear to require a different result. The Supreme Court, in *Rodrique v. Aetna Casualty Co.*, 1969, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360, held that the Outer Continental Shelf Lands Act requires the application of state law to injuries occurring on fixed platforms on the Outer Continental Shelf. 43 U.S.C. § 1333(a)(2). Finding that Congress intended to treat fixed platforms as artificial islands rather than as vessels, the Court found maritime law to be inapplicable; therefore state law was to be applied in determining the legal affect of the events that happened on the man-made islands. Obviously, if state law is applicable in toto, the direct action statute applies. *Rodrique* requires that the platform be treated as if it were Louisiana soil except in those instances where, as is the case with respect to the coverage of compensation statutes, there are contrary rules of applicable federal law.

Similarly if the injury is to a seaman who invokes the Jones Act, and occurs on a

---

4. The Louisiana courts have allowed the application of the Direct Action Statute in a Jones Act case arising beyond the territorial limits of the state, where the policy was delivered here.

*Trahan v. Gulf Crews, Inc.*, 246 So.2d 280, La.App.3d Cir. 1971, rev'd on other grounds, 260 La. 29, 255 So.2d 63.

platform rather than either on a vessel or on dry land a state statute permitting a direct action against the employer's insurer should be considered a constitutional regulation by the state of a contract entered into within its jurisdiction, not an unconstitutional intrusion into maritime affairs.

■ The jurisprudence of the Fifth Circuit that compels a different result begins with a case that did not involve the Jones Act. In *Continental Oil Co. v. London Steam-Shipowners' Mutual Insurance Association, Ltd.*, 5th Cir. 1969, 417 F.2d 1030, the court held that the direct action statute was inapplicable in a suit involving a collision between a vessel and a fixed platform on the Outer Continental Shelf.

The *Continental* trial judge had dismissed the direct action on the basis that the statute was by its terms inapplicable; the accident did not occur in Louisiana nor was the policy issued or delivered in that state. This approach was consistent with the rationale of the prior discussions. The Admiralty Extension Act would have made the case cognizable in admiralty if the collision had occurred between a vessel, and, for example, a wharf in New Orleans; it should be cognizable in admiralty even though the damaged structure was a fixed platform on the Outer Continental Shelf. Since the direct action statute is applicable in admiralty cases, the applicability or inapplicability of the state direct action statute was to be determined by state law as would be the case in any other admiralty case.

The Fifth Circuit affirmed, but felt that the trial judge should have considered the effect of the Lands Act, and that a different analysis should be applied when the maritime law is applied via the Lands Act than when applied *ex proprio vigore*.

The results in *Continental Oil* and *Olympic Towing* are in obvious conflict, and, if no more had been said, it would seem that *Olympic Towing*, the later decision, had overruled *Continental Oil sub silentio*. In *Nations v. Morris*, 5th Cir. 1973, 483 F.2d 577, however, the Fifth Circuit reaffirmed and extended the *Continental Oil* decision, saying:

> [We] find the Louisiana Direct Action Statute to be inapplicable to causes of action based upon occurrences on artificial islands or structures on the Continental Shelf.

483 F.2d at 580. While much of the opinion might be regarded as dicta, because there was a sound alternative basis for it,[5] the decision does appear controlling here.

The *Continental-Nations* rule appears to be anomalous. The direct action statute is applicable in cases involving two vessels where the maritime law is applicable; it applies to seaman's injuries on the sea and on dry land; its reach stops only at cases arising on fixed platforms, despite the fact that otherwise state law applies on the selfsame platform. See Note, 5 Journal of Maritime Law & Commerce 135 (1973).

It is possible to distinguish the facts in *Nations* from those presented here. *Nations* involved a non-seaman injured on a fixed platform; maritime law was not applicable to his claim in any way. Here the plaintiff is a seaman whose claim is admittedly governed by the maritime law. Such a distinction would disparage *Nations* and appear to be merely result oriented. Nor can the logic of *Continental Oil* be successfully distinguished. The maritime law was there applicable by virtue of the Admiralty Extension Act; here it applies because the plaintiff is a Jones Act seaman. In both cases, maritime law applies; the reason it

---

**5.** The plaintiff in *Nations* filed suit against the comprehensive general liability insurer of his employer claiming that his injuries had been caused by the negligence of an executive officer of his employer, an additional insured under the policy. Since the Longshoremen's Act, 33 U.S.C. § 933(i), clearly prohibits suits against fellow employees, and the court held that this defense was available to the insurer, it

was not necessary to reach the question whether the direct action statute could apply generally in suits arising on the Outer Continental Shelf. However, this court, prior to *Nations*, had allowed the statute to apply in a suit arising on a fixed platform on the Outer Continental Shelf. *Taylor v. Fishing Tools, Inc.*, E.D.La. 1967, 274 F.Supp. 666.

pertains should not be of consequence. Finally, to attempt to distinguish *Continental Oil* on the basis that all that was said was dicta since the statute did not apply in any event because the policy was not issued or delivered in Louisiana would be to disregard the spirit of the opinion and its sequel, *Nations v. Morris.* The Court of Appeals went to great lengths to say what it did in both cases. It apparently intended to chart a course for lawyers and lower courts to follow.

If this court could write on a blank slate, it would decide the issue differently. But "grudging consideration of earlier decisions" should be avoided by trial judges as well as by other panels of the appellate court that made those earlier decisions. See Rubin, Views from the Lower Court, 23 U.C.L.A. Law Review 448, 452 (1976). Accordingly, the motion of defendant Commercial Union Assurance Company for summary judgment is GRANTED.