Johnny M. HUGHES, et al.

v.

LISTER DIESELS, INC., et al.

Civ. A. No. 84–5733.

United States District Court,
E.D. Louisiana.

July 21, 1986.

Michael J. Mestayer, Leger & Mestayer, New Orleans, La., for plaintiffs.

Frank Ascardo, Montgomery, Barnett, Brown & Read, Jerald Talbot, Lemle, Kelleher, Kohlmeyer, Hunley, Moss & Frilot, Frank LeBlanc, Camp, Carmouche, Barsh, Hunter, Gray & Hoffman, Kathryn J. Lichtenberg, Sessions, Fishman, Rosenson, Boinfontaine, Nathan & Winn, New Orleans, La., for defendants.

## MEMORANDUM OPINION

MENTZ, District Judge.

The plaintiff, Johnny M. Hughes ("Hughes"), was allegedly injured on December 1, 1983 while working on a fixed platform located in the Gulf of Mexico, some twenty-one miles from shore. The plaintiff and his wife filed suit, claiming injuries caused by the defendants' alleged negligence and by an allegedly defective diesel engine. Among the defendants sued were the distributor of the diesel engine, Lister Diesels, Inc. ("Lister"), and the manufacturer of the diesel engine, R.A. Lister & Company ("RAL").

RAL has filed a motion to dismiss for lack of personal jurisdiction. A review of the applicable facts and law compels the conclusion that personal jurisdiction exists over RAL. Accordingly, RAL's motion is DENIED for the reasons stated below.

The Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331, *et seq.*, regulates submerged lands located on the Outer Continental Shelf of the United States. Since the plaintiff was allegedly injured while working on a fixed offshore platform approximately twenty-one miles from shore, the OCSLA applies. Accordingly, jurisdiction is based on federal question jurisdiction. *See Aymond v. Texaco, Inc.,* 554 F.2d 206 (5th Cir.1977).

The OCSLA provides that wherever state law is not inconsistent with federal law, it is adopted and applied on the Outer Continental Shelf as surrogate federal law. Thus, 43 U.S.C. § 1333(a)(2)(A) provides as follows:

(2)(A) To the extent that they are applicable and not inconsistent with this Act or with other Federal laws and regulations of the Secretary now in effect or hereafter adopted, the civil and criminal laws of each adjacent State now in effect or hereafter adopted, amended, or repealed are hereby declared to be the law of the United States for that portion of the subsoil and seabed of the Outer Continental Shelf, and artificial islands and fixed structures erected thereon, which

would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf, ...

As a result, the applicable state law is applied as surrogate federal law only if it is not inconsistent with OCSLA.

■ The proper standard of amenability to personal jurisdiction in a federal question case was determined in *DeMelo v. Toche Marine, Inc.*, 711 F.2d 1260 (5th Cir.1983). The *DeMelo* court held that:

> [W]hen a federal question case is based upon a federal statute that is silent as to service of process, and a state long-arm statute is therefore utilized to serve an out-of-state defendant, Rule 4(e) [of the Federal Rules of Civil Procedure] requires that the state's standard of amenability apply.

711 F.2d at 1266. Since the OCSLA does not provide for service of process, the Louisiana long arm statute determines the manner in which nonresident defendants are to be served, and the amenability of nonresidents to service of process. Thus, RAL is amenable to jurisdiction in this Court only if jurisdiction over it could be asserted under the Louisiana long arm statute, and if the Louisiana long arm statute is not inconsistent with OCSLA.

This Court finds that there is jurisdiction over RAL under the Louisiana long arm statute, La.Rev.Stat.Ann. 13:3201 (West Supp.1985). La.R.S. 13:3201 provides in pertinent part:

> A court may exercise personal jurisdiction over a nonresident, who acts directly or by an agent, as to a cause of action arising from any one of the following activities performed by the nonresident:
>
> (1) Transacting any business in this state.
>
> .   .   .   .   .
>
> (8) Manufacturing of a product or component thereof which caused damage or injury in this state, if at the time of placing the product into the stream of commerce, the manufacturer could have foreseen, realized, expected, or

anticipated that the product may eventually be found in this state by reason of its nature and the manufacturer's marketing practices.

La.R.S. 13:3201. Jurisdiction over RAL is present under both La.R.S. 13:3201(1) and 13:3201(8).

In order to assert personal jurisdiction over a non-resident defendant in Louisiana, the requirements of the due process clause of the fourteenth amendment as well as the provisions of the Louisiana long arm statute must be met. *Farnham v. Bristow Helicopters, Inc.*, 776 F.2d 535 (5th Cir. 1985). The due process standard requires that the foreign defendant must have minimal contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In making this determination,

> [t]he court must first consider whether the defendant purposefully availed itself of the benefits and protection of the forum state's laws; and second, whether the state has any special interest in providing a forum for the suit, taking into consideration the relative conveniences and inconveniences of the parties.

*Runnels v. TMSI Contractors, Inc.*, 764 F.2d 417, 419 (5th Cir.1985) (quoting *Bean Dredging Corporation v. Dredge Technology Corporation*, 744 F.2d 1081 (5th Cir. 1984)).

■ Applying the foregoing principles to the case at bar, it is clear that maintaining RAL as a defendant comports with due process, since RAL has sufficient minimal contacts with the state of Louisiana. RAL is a British corporation which manufactures various products, including the diesel engine alleged to have caused the plaintiff's injuries. In 1942, RAL began to market its products through its distributor, Lister. A written contract between RAL and Lister establishes an exclusive distributorship arrangement between the parties regarding the sale of RAL products. During the period from 1975 to 1982, seventy-

five percent of Lister's total sale revenues were derived from the sale of products manufactured by RAL; the remainder of Lister's sales revenues were attributable to ancillary equipment approved for use by RAL. Approximately twenty percent of Lister's total sales in the United States or about $5 million per year in revenue to Lister came from the salesmen handling the Louisiana territory. Thus, RAL products entered the stream of commerce in Louisiana. Additionally, the promotional and instructional literature which accompanies Lister products is paid for, prepared by, and printed by RAL in England. Some publications are printed specifically for distribution in the United States. Finally, key RAL personnel made at least half a dozen visits to Louisiana to cultivate the Louisiana market. It is clear that RAL actively cultivated the Louisiana market and knew that its products would be found in Louisiana. *See* Deposition of Lister Diesels, Inc., through its designated agent, Peter L. Frayling, pp. 20, 46 and 65. These contacts are more than sufficient to meet the due process requirements necessary before personal jurisdiction may be asserted over a nonresident defendant, and comport with "fair play and substantial justice." *See Vault Corp. v. Quaid Software, Ltd.*, 775 F.2d 638 (5th Cir.1985). Further, considering these contacts, it is fair to require RAL to appear and defend a suit in Louisiana allegedly resulting from a product manufactured by RAL.

As the due process requirements have been met, the only remaining question is whether the provisions of the Louisiana long arm statute are applicable. La.R.S. 13:3201(1) requires that plaintiff's claim "arise from" the defendant's transaction of business in Louisiana. *Farnham*, 776 F.2d at 737. RAL argues that following *Farnham* results in the conclusion that the plaintiff's cause of action did not arise from RAL's contacts with the state. However, in *Farnham*, the plaintiff filed suit in

Louisiana alleging damages sustained as a result of an accident which occurred in Indonesia. The defendant's only contact with Louisiana was its recruitment in Louisiana of the helicopter pilot involved in the accident at issue. RAL has engaged in much greater activity in Louisiana, including several visits to Louisiana by RAL representatives. More importantly, RAL has contracted with and sold products to Lister, its distributor. Many of these products, including the diesel engine alleged to have caused plaintiff's injury were sold in Louisiana. Although Lister is the corporate entity which sold the products within Louisiana, while RAL sold products to Lister, it is clear that the products manufactured by RAL entered the state and were the alleged cause of plaintiff's injuries [1]. Thus, the plaintiffs' cause of action resulting from an allegedly defective engine "arises from" RAL's transaction of business within this state, and jurisdiction over RAL is present under La.R.S. 13:3201(1). *See Bean Dredging Corp. v. Dredge Technology Corp.*, 744 F.2d 1081 (5th Cir.1984); *Austin v. North American Forest Products*, 656 F.2d 1076 (5th Cir.1981); *Oswalt v. Scripto, Inc.*, 616 F.2d 191 (5th Cir.1980).

Jurisdiction over RAL is also present under the provisions of La.R.S. 13:3201(8). The evidence shows that RAL could reasonably have anticipated that its products would be found within Louisiana, as is required by 13:3201(8). See supra at pp. 235–236.

■ RAL argues that because the alleged accident occurred in the Outer Continental Shelf, the "in this state" requirement of La.R.S. 13:3201(8) is not met. However, 43 U.S.C. § 1333(a)(2), *supra,* provides that the laws of Louisiana are declared to be the laws of the United States, and applied to the Outer Continental Shelf, and the artificial islands erected thereon, such as the fixed platform involved in this case. There is no doubt that

---

**1.** It is not significant that the plaintiff's accident occurred in the Outer Continental Shelf of Louisiana, rather than within the boundaries of the state. See infra pp. 236–237. The diesel engine at issue was present within the state prior to its delivery to a fixed offshore platform located on the Louisiana Outer Continental Shelf.

this Court would have jurisdiction if this accident occurred within the boundaries of Louisiana. Unless the "in this state" requirement of La.R.S. 13:3201(8) is construed to include fixed platforms located on the Louisiana Outer Continental Shelf for an action brought under OCSLA, RAL could never be found to be amenable to suit under this provision of the long arm statute. Unless this construction is made, the provisions of OCSLA which provide for the incorporation of the applicable state law would be rendered meaningless, since the plaintiff would never be able to sue the manufacturer of a product for an accident occurring on a fixed platform located on the Louisiana Outer Continental Shelf. Further, it is reasonable to construe the "in this state" requirement as including fixed platforms located on the Outer Continental Shelf. As Judge Rubin stated:

> By its terms the Outer Continental Shelf Lands Act is intended to make Louisiana law applicable to the artificial islands in the Gulf of Mexico, *just as if they were located in Louisiana.* [Emphasis added].

*Taylor v. Fishing Tools, Inc.,* 274 F.Supp. 666, 671 (E.D.La.1967). Finally, this conclusion is consistent with the intent of OCSLA which was enacted with a stated goal of promoting safety in offshore operations. 43 U.S.C. § 1332(6); H.R.Rep. No. 95–590, 95th Cong., 2nd Sess., *reprinted in* 1978 Code Cong.Ad.News 1450, 1462, 1533. Therefore, under the Louisiana long arm statute, all fixed structures located on the Louisiana Outer Continental Shelf are considered to be "islands" of Louisiana pursuant to OCSLA; any damage or injury occurring on such platforms is deemed to occur in Louisiana. Accordingly, RAL is subject to jurisdiction under La.R.S. 13:3201(8).

RAL cites the case of *Nations v. Morris,* 483 F.2d 577 (5th Cir.1973), *cert. denied,* 414 U.S. 1071, 94 S.Ct. 584, 38 L.Ed.2d 477 (1973), for the proposition that actions occurring on the rigs of the Outer Continental Shelf are not within the state. However, RAL has misinterpreted the holding of the court in *Nations.* In *Nations,* an employee who had allegedly been injured on the Outer Continental Shelf attempted to sue a fellow employee under the Louisiana Direct Action Statute, La.Rev.Stat. Ann. 22:655. The Fifth Circuit reasoned that OCSLA, 43 U.S.C. § 1333(c), provided for application of the Longshoremen's and Harbor Workers' Compensation Act ("LHWCA") to accidents occurring on the Outer Continental Shelf, and held that the LHWCA was the plaintiff's exclusive remedy. In *Nations,* there was no gap in federal law which would result in the application of state law; the LHWCA, as provided for in OCSLA, provided for a sufficient system of remedies for workers injured in connection with operations involving removal or development of natural resources from the Outer Continental Shelf. 483 F.2d at 585. However, in the case at bar, OCSLA does not provide for service of process. Thus, a gap exists in OCSLA which must be filled in with provisions from the Louisiana long arm statute. A finding that jurisdiction over RAL is present under La.R.S. 13:3201(8) is consistent with the policies of OCSLA.

Accordingly, RAL's motion to dismiss for lack of jurisdiction is DENIED.