### Albert G. COUVILLION

v.

### NICKLOS OIL & GAS CO., et al.

Civ. A. No. 86–4981.

United States District Court,
E.D. Louisiana.

Oct. 6, 1987.

---

Jacob Taranto, III, Wiedemann & Fransen, A. Remy Fransen, Jr., New Orleans, La., for Albert G. Couvillion.

Allen, Gooch, Bourgeois Breaux, Robison & Theunissen, Randall K. Theunissen, Lafayette, La., for Union Oil Co. of California.

Burke & Mayer, James O.M. Womack, New Orleans, La., Ross, Griggs & Harrison, H. Lee Lewis, Jr., Houston, Tex., for First Horizon Ins. Co.

## ORDER AND REASONS

FELDMAN, District Judge.

Before this Court is a Motion for Summary Judgment submitted by defendant, Nicholas Collwyn Sturge, Nominee and Representative of Certain Underwriters at Lloyd's, London. The question presented focuses again on when a state law applies to OCSLA; one which often perplexes federal courts; one for which no bright line has yet been drawn. This Motion for Summary Judgment is GRANTED.

Plaintiff, Albert G. Couvillion, alleges that he was injured in a slip and fall accident in the kitchen of a Union Oil Company of California offshore oil platform. At the time, Couvillion was employed by Delta Catering, Inc. The location of plaintiff's accident was apparently the site of an operation being conducted by Nicklos Drilling Company and Nicklos Oil and Gas Company.

Couvillion originally brought this action against the Nicklos group and Union Oil. He later amended his complaint to include a claim against Lloyd's, Nicklos's insurer. Subsequently, defendant Union Oil cross-claimed against Lloyd's, claiming that, pursuant to an indemnity agreement between Union Oil and Nicklos, Lloyd's, as Nicklos's insurer, was responsible for any liability of Union Oil. Prior to the commencement of this litigation, Nicklos was placed in involuntary bankruptcy by its creditors.[1]

According to the undisputed facts, the Union Oil platform on which the alleged accident occurred is a fixed platform on the Continental Shelf, and the applicable law in this case, therefore, is the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333, et seq. (1982). *See Rodrigue v. Aetna Casualty and Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969). Under 43 U.S.C. § 1333(a)(2)(A), the laws of the state adjacent to the area of the Outer Continental Shelf on which the platform is located are incorporated into OCSLA "to the extent that they are applicable and not inconsistent with" the Act or other provisions of federal law. Plaintiff, Couvillion, and defendant Union Oil contend that the Louisiana Direct Action Statute, La.Rev.Stat. Ann. § 22:655 (West 1978), should be incorporated into OCSLA in this action, so as to enable them to make Lloyd's subject to their claims.

The question for this Court's determination, then, is whether OCSLA should be held to incorporate the Louisiana Direct Action Statute in this case. If the Louisiana statute cannot be incorporated, there is no direct cause of action against Lloyd's, as Nicklos's insurer, and Lloyd's must succeed in its summary judgment against the respondents' claims. Although the question has been somewhat in doubt, and the OCSLA test is more difficult to apply than its outwardly simple language suggests, this Court concludes that, under the case law of the Fifth Circuit and this District, the Louisiana Direct Action Statute cannot be applied to a case arising under OCSLA.

Respondents correctly point out that decisions in this Circuit have not always been clear on the question of the general applicability of the Direct Action Statute in OCSLA cases. The Fifth Circuit has re-

---

1. See Advice of Bankruptcy and Notice of Automatic Stay, filed December 15, 1986. The Bankruptcy Petition was filed on September 4, 1986 in the United States Bankruptcy Court for the Western District of Louisiana.

fused to apply the statute.[2] One district court opinion suggested, in dicta, that the Direct Action Statute could be applied in an OCSLA setting. In *Taylor v. Fishing Tools, Inc.*, 274 F.Supp. 666 (E.D.La.1967), the court noted that "the language of the [Direct Action Statute] does not bar its application to claims arising from accidents otherwise cognizable under [OCSLA]." *Id.* at 672.[3]

In *Nations v. Morris*, 483 F.2d 577 (5th Cir.1973), however, the Fifth Circuit stated: "[w]e find the Louisiana Direct Action Statute to be inapplicable to causes of action based upon occurrences on artificial islands or structures on the Continental Shelf." *Id.* at 580. Although *Nations* might be distinguished because it also involved a claim under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*, the district court in *Koesler v. Harvey Applicators, Inc.*, 416 F.Supp.

872 (E.D.La.1976), rejected such a narrow interpretation of *Nations. See* 416 F.Supp. at 875.[4] It is instructive to note that *Nations* would apply here even if it were given only that narrow interpretation.

Most recently, the district court in *Nesom v. Chevron U.S.A.*, 633 F.Supp. 55 (E.D.La.1984), held that "[The Direct Action Statute] is inapplicable to causes of action based upon occurrences on structures located on the Outer Continental Shelf." *Id.* at 59, *citing Nations, supra. Nesom's* broad adoption of the Fifth Circuit holding in *Nations* leaves no room for clever distinctions between cases.[5] Plaintiff urges in opposition that state law must fill in OCSLA when gaps result from the lack of a remedy in the federal law. But here the bankruptcy of Nicklos merely suspends the remedy. Plaintiff's logic would require that some state remedy be read into OCSLA whenever a stay order issues in bankruptcy to

2. *See, e.g., Continental Oil Co. v. London Steam-Ship Owners' Mutual Insurance Co.,* 417 F.2d 1030 (5th Cir.1969). In *Continental Oil,* the court refused to apply the Louisiana Direct Action Statute, noting that the plaintiff had a "fully effective maritime right and remedy." *Id.* at 1035. The court also noted that, in order for a state law provision to be incorporated into OCSLA, the provision must not only be "applicable," in the sense that the state law would apply in the absence of a federal scheme, but it must be necessary, in the sense that it fills some "void" or "gaps" in OCSLA. *Id.* at 1035–37.

3. The *Taylor* court's analysis is arguably different from the issue of whether OCSLA allows the incorporation of the Direct Action Statute. The *Taylor* inquiry focuses on whether Louisiana case law would indicate the use of the Direct Action Statute in the case of an accident on a fixed offshore platform on the Continental Shelf. The inquiry in the present case is whether federal law would allow the incorporation of the Direct Action Statute into OCSLA. The former inquiry is a question of state law, the latter is primarily a question of federal law. This intellectual exercise is not, however, dispositive. Other considerations are.

The passage quoted from *Taylor* is clearly dicta in that case. The court held that the plaintiff's action sounded in contract and not in tort, and therefore, the Direct Action Statute was not applicable as a matter of state statutory law.

Finally, Judge Rubin, who authored the *Taylor* opinion, later held in *Koesler v. Harvey Applicators, Inc.,* 416 F.Supp. 872 (E.D.La.1976), that, as a matter of federal law, under Fifth

Circuit precedent, the Direct Action Statute could not be incorporated into OCSLA. *See* n. 4 *infra* and accompanying text.

4. In *Koesler,* Judge Rubin noted that a narrow interpretation of Nations based upon its involving a Longshoremen's and Harbor Workers' claim "would disparage *Nations* and appear to be merely result oriented." *Koesler,* 416 F.Supp. at 872.

5. All parties refer this Court to the holding in *Hughes v. Lister Diesels, Inc.,* 642 F.Supp. 233 (E.D.La.1986). In that case, the district court held that the Louisiana Long–Arm Statute, La. Rev.Stat.Ann. § 13:3201 (West Supp.1978), could be incorporated into OCSLA. While *Hughes* does contain some broad language in reference to the application of Louisiana law under OCSLA, the Louisiana statute involved in *Hughes* is not the statute involved in the present case. Application of the Direct Action Statute is affected by the various cases, cited above, interpreting the propriety of its incorporation into OCSLA, and thus this Court's determination of its applicability in this case differs from the determination of the *Hughes* court with regard to the Long–Arm Statute. This Court is bound by the specific precedent of Fifth Circuit decisions about the Direct Action Statute, notwithstanding any contrary surface appeal the Hughes reasoning might have. In *Hughes* the court merely held that in federal question jurisdiction when the federal statute is silent on the manner of effecting service of process, the Louisiana Long–Arm Statute is applicable and not inconsistent with federal law for OCSLA purposes.

suspend some federal remedy. No cases have been cited for such an extreme concept. This Court, therefore, holds that the plaintiffs in this case cannot use the Louisiana Direct Action Statute to reach Lloyd's.

Accordingly, for the foregoing reasons, defendant Lloyd's Motion for Summary Judgment is GRANTED.