**Jimmy Dale MOODY**

v.

**CALLON PETROLEUM OPERATING COMPANY, Hanover Compressor Company, and Grasso Production Management Inc.**

**No. CIV.A. 98–1139.**

United States District Court,
E.D. Louisiana.

Feb. 11, 1999.

---

806

J. Arthur Smith, III, Baton Rouge, LA, James M. Patton, Patton & Veigas, PC, Birmingham, AL, for Plaintiff.

Edward Settoon Johnson, Salvador Joseph Pusateri, Johnson, Johnson, Barrios & Yacoubian, New Orleans, LA, for Intervenors.

James C. Donohue, Marti M. Ogden, Crawford & Lewis, Baton Rouge, LA, for Defendant Callon Petroleum Operating.

Kathleen K. Charvet, McGlinchey Stafford P.L.L.C., New Orleans, LA, for Defendant Hanover Compressor Co.

## ORDER AND REASONS

DUVAL, District Judge.

Before the Court is a Motion to Review Magistrate Judge's Order denying the

plaintiff's Motion for Leave to Amend the Complaint. Plaintiff Jimmy Dale Moody ("Moody") seeks to make the liability insurers of Callon Petroleum Operating Company ("Callon") and Hanover Compressor Company ("Hanover") direct defendants in this suit. The magistrate judge denied the request without assigning reasons. Having reviewed the pleadings, memoranda and the relevant law, the Court finds that it must grant plaintiff's motion and reverse the ruling of the magistrate judge for the reasons that follow.

## Background

Jimmy Dale Moody filed his original Complaint on April 13, 1998, alleging jurisdiction pursuant to 43 U.S.C. § 1349(b)(1) of the Outer Continental Shelf Lands Act ("OCSLA"). He also alleges diversity jurisdiction under 28 U.S.C. § 1332 since the matter in controversy exceeds the sum of $75,000.00 exclusive of interest and cost. Plaintiff asserts that he was employed by Grasso Production Management Inc. ("Grasso"), the third named defendant in this matter, as a "lead operator" and was working in the course and scope of his employment on an offshore fixed platform located on the Outer Continental Shelf off of the coast of Louisiana. Grasso was dismissed prior to its answering the Complaint by plaintiff pursuant to Fed.R.Civ.P. 41(a)(1) on May 15, 1998. However, it intervened in the matter on September 16, 1998. The platform was owned by Callon Petroleum Operating Company.

Plaintiff contends that on April 12, 1997, he was injured when he slipped and fell in a quantity of engine oil mixed with rain water which engine oil had leaked from a compressor onto the compressor skid on which he was required to walk in order to perform the duties of his job. He claims that the engine oil had leaked from a compressor that was owned by Hanover Compressor Company. He alleges that the accident was caused by the concurrent negligence of defendants in, *inter alia*, failing to provide a safe place to work and/or failing to properly maintain and repair the compressor even though the defendants knew or should have known that the compressor had a propensity to leak and had leaked prior to the plaintiff's injury.

Plaintiff filed a Motion for Leave to Amend Complaint whereby he sought to file an amended complaint naming the insurers of the two remaining defendants based on the Louisiana Direct Action Statute, La.Rev.Stat. 22:655 ("Direct Action Statute"). Callon and Hanover opposed the motion contending that under the controlling law of the United States Court of Appeals for the Fifth Circuit and most of the decisions rendered in the Eastern District of Louisiana, "the Louisiana Direct Action Statute is inapplicable to causes of action based upon occurrences on artificial islands or structures on the Continental Shelf." *Nations v. Morris*, 483 F.2d 577, 580 (5th Cir.1973). In addition, Hanover maintains that by its own terms, the Direct Action Statute does not apply to the Hanover Policy at issue.

## Standard of Review

Under 28 U.S.C. § 636(b)(1)(A), where a magistrate judge has ruled upon a preliminary matter such as the one before the Court, "[a] judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law." *Id.* Fed. R.Civ.P. 72(a). The "clearly erroneous" standard requires that the court affirm the decision of the magistrate judge unless "on the entire evidence [the court] is left with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *Seitel Geophysical, Inc. v. Greenhill Petroleum Corp.*, 1996 WL 11779 (E.D.La. Jan.11, 1996).

Generally, pursuant to Fed. R.Civ.P. 15(a), amendment of a pleading after a responsive pleading has been served is permitted with leave of court. And indeed, the Fifth Circuit has indicated

that the determination rests in the sound discretion of the district court, and the "court should freely give leave to amend 'when justice so requires.'" *Jamieson v. Shaw*, 772 F.2d 1205, (5th Cir.), *reh'g denied*, 776 F.2d 1048 (5th Cir.1985) *citing Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). Indeed, the Rule has been interpreted as evincing a bias in favor of granting leave. The basis for this approach is to permit liberal pleading and amendment to facilitate adjudication on the merits while avoiding an excessive formalism. *Id. citing Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 597 (5th Cir.1981). "Thus, if the district court lacks a 'substantial reason' to deny leave, its discretion 'is not broad enough to permit denial.'" *Id.*

In *Jamieson*, the Fifth Circuit enumerated what is considered substantial reason to deny leave:

> Among the acceptable justifications for denying leave to amend are undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by prior amendment, undue prejudice to the opposing party, and the futility of the amendment. *Union Planters National Leasing, Inc. v. Woods*, 687 F.2d 117, 121 (5th Cir.1982). Even if substantial reason to deny leave exists, the court should consider prejudice to the movant, as well as judicial economy, in determining whether justice requires granting leave. *Id.* When futility is advanced as the reason for denying an amendment to a complaint, the court is usually denying leave because the theory presented in the amendment lacks legal foundation or because the theory has been adequately presented in a prior version of the complaint. *See, e.g., Pan-Islamic Trade Corp. v. Exxon*, 632 F.2d 539, 546 (5th Cir.1980), *cert. denied*, 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 236 (1981) Consequently, review of such a denial tends to blur the distinction between analysis of the procedural context under Rule 15(a) and the analysis of the sufficiency of the complaint under Rule 12(b)(6). *Id.* at 546; *see also Emory v. Texas State Board of Medical Examiners*, 748 F.2d 1023, 1027 (5th Cir.1984); *Chitimacha Tribe*, 690 F.2d at 1164; *Dussouy*, 660 F.2d at 599–600.

*Jamieson*, 772 F.2d at 1208–09. Thus the Fifth Circuit concluded:

> We do not hold that Rule 15(a) required the district court in every case to grant leave to amend when the amended complaint states a cause of action. As noted earlier, other considerations may justify denial in a proper case. *See Union Planters*, 687 F.2d at 121. However, where, as here, the only proffered justification for denial is futility, the determination that the complaint is legally sufficient and not cumulative deprives the district court of all "substantial reason" to deny leave and severely restricts its discretion to do so *Dussouy*, 660 F.2d at 598. In such a case, leave to amend should be granted. Justice requires no less. Fed.R.Civ.P. 15(a).

*Jamieson*, 772 F.2d at 1211. Thus, this Court must determine whether under no circumstances can the Louisiana Direct Action Statute be invoked where OCSLA is a basis for jurisdiction.

This decision requires a comprehensive analysis of the controlling case law. There is substantial legal support found in the jurisprudence of the United States District Court for the Eastern District of Louisiana for the proposition that the Direct Action Statute is never applicable in an OCSLA case. *See Koesler v. Harvey Applicators, Inc.* 416 F.Supp. 872 (E.D.La.1976) (Rubin, J.); *Couvillion v. Nicklos Oil & Gas Co.*, 671 F.Supp. 446 (E.D.La.1987) (Feldman, J.); *Nesom v. Chevron U.S.A. Inc.*, 633 F.Supp. 55 (E.D.La.1984) (Wicker, J.); *Dunaway v. Jay Jay Well Service, Inc.*, 1989 WL 57126 (E.D.La.1989) (Sear, J.). However, this Court respectfully disagrees with the courts that have held that the Direct Action Statute is not applicable

even in the instances where the only law applicable is surrogate federal law, the law of Louisiana, and believes that those courts have misapplied the analysis found in the seminal Fifth Circuit cases *Continental Oil Co. v. London Steam–Ship Owners' Mut. Ins. Assoc.*, 417 F.2d 1030 (5th Cir.1969) and *Nations v. Morris*, 483 F.2d 577 (5th Cir.1973).

Thus, this Court concurs with the analysis found in *Freeport McMoran Resource Partners v. Kremco, Inc.*, 1992 WL 84312 (E.D.La.1992) (Livaudais, J.), where that court found:

> According to *Continental* and *Nations*, state law, under OCSLA, is used when needed to fill gaps in federal law. In our case there is no applicable federal law. Therefore, substantive state law is needed to fill the void left by the federal law's silence. To apply substantive state law here, as we must do, and not apply Louisiana's [Direct Action Statute] would simply make no sense.

*Freeport*, 1992 WL 84312 at 3. The Court will now explain how it reached this same conclusion.

### Analysis

#### OCSLA—the Statutory Scheme

It is undisputed that Moody worked aboard a platform located on the Outer Continental Shelf to which OCSLA is applicable. OCSLA adopts a bifurcated federal-state scheme by providing personal injury and death remedies for workers injured or killed in oil exploration on the outer Continental Shelf. George W. Healy, III, *Remedies for Maritime Personal Injury and Wrongful Death in American Law; Sources and Development*, 68 Tul. L.Rev. 311, 348 (1994). It extends the laws of the United States to offshore platforms like the one involved herein.[1]

OCSLA applies the Longshore Harbor Workers Compensation Act, 33 U.S.C. §§ 901, *et seq.* ("LHWCA") in the context of employer/employee liability to injuries resulting from "operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing, or transporting by pipeline the natural resources ... of the subsoil and seabed of the outer Continental Shelf." 43 U.S.C. § 1333(b). However, OCSLA also adopts state law in the following provision:

> To the extent that they are applicable and not inconsistent with ... Federal laws, ... the laws of each adjacent State ... are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf....

43 U.S.C. § 1333(a)(2)(A). Thus, for example, under some circumstances fixed platforms have been held to be buildings under article 2322 of the Louisiana Civil Code, thus making the platform owner under certain circumstances liable for "damage occasioned by its ruin."

The duality of OCSLA was examined by the United States Supreme Court in *Rodrigue v. Aetna Casualty and Surety Co.*, 395 U.S. 352, 355–56, 89 S.Ct. 1835, 1837–38, 23 L.Ed.2d 360 (1969). At issue in *Rodrigue* were the deaths of two workers, Rodrigue and Dore, on two separate drilling rigs on the outer Continental Shelf off of Louisiana. One was killed when a crane mounted on a rig collapsed; the other plaintiff was killed when he fell off of a

---

1. The statute provides in relevant part:
    The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and installations and other devices permanently or temporarily attached to the seabed ... or other device (other than a ship or vessel) ... to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located with a State.
    43 U.S.C. § 1333(a)(1).

derrick rising from the rig to the rig floor. With respect to the Dore suit, it was brought under the "General Maritime Laws, the Death on the High Seas Act, ... Article 2315 of the (Louisiana Code) and under the other laws of the United States and the State of Louisiana." *Id.* at 353, 89 S.Ct. at 1836. All claims except those under the Seas Act were dismissed on a motion for summary judgment. With respect to Rodrigue suit, his widow and two children brought three actions in the federal district court. One in admiralty under the Seas Act and the other two were civil actions against the owner and insurer of the drill rig, and the owner of the stationary platform. Those actions were brought under OCSLA and Article 2315 of the Louisiana Revised Civil Code. Procedurally, the Supreme Court explained:

> The trial court consolidated the two civil actions and dismissed the insurer, who had been made a party to one of the civil actions pursuant to one of the civil actions pursuant to the Louisiana direct-action statute. La.Rev.Stat. Ann. § 22:655. No reason was assigned for the dismissal, but the ground urged in the motion was that the accident did not occur within the State of Louisiana, so that Louisiana law did not apply. Consistently with this, the District Judge dismissed the consolidated civil action before trial on the ground that the Seas Act provided a remedy and that under such circumstances the Lands Act would not make the inconsistent state remedy applicable.

*Rodrigue,* 395 U.S. at 355, 89 S.Ct. at 1837. In an accompanying footnote, the Supreme Court wrote:

> The District Court dismissed' one of the civil causes of action on the ground that unlike the other it did not specifically name the Lands Act, but rested instead directly on Louisiana law. This formal omission was inconsequential because of the District Judge's view that there would be no cause of action even under the Lands Act and Louisiana law

together. On remand, it may be that both claims can be construed to assert action under the Lands Act and Louisiana Law, or that any deficiency in this regard can be cured· by amendment of the pleadings. Fed. Rule Civ. Proc. 15.

*Id.* Using such language, the Supreme Court does not imply the Louisiana Direct Action Statute was inapplicable in a "Lands Act" application.

■ The United States Supreme Court explained in *Rodrigue* that OCSLA's language clearly intends that the body of law that is to be applied on the outer Continental Shelf is to be the federal law of the United States, applying state law only as surrogate federal law and then only when not inconsistent with applicable federal law. *Id.* at 356, 89 S.Ct. at 1837–38. The Supreme Court noted that "However, for federal law to oust adopted state law federal law must first apply." Thus, for "surrogate federal," i.e. state law, to apply three conditions are significant: (1) the controversy must arise on a situs covered by OCSLA; (2) another federal law must not apply (Jones Act or LHWCA for example); and (3) the state law must not be inconsistent with Federal law. *See Union Texas Petroleum v. PLT Engineering,* 895 F.2d 1043, 1047 (5th Cir.1990).

This duality is at the core of the difficulty concerning the issue before the Court. It is clear the Direct Action Statute is part of the law of Louisiana, the adjacent state law or "surrogate federal law" as adopted under OCSLA. From the foregoing, it is consistent then that two leading Fifth Circuit cases, *Continental* and *Nations,* found that where other federal law was applicable, there was no need to fill the "gap" with Louisiana law. From the language found in those two cases; however, the groundwork for the over-broad interpretation adopted by some courts was laid.

**Fifth Circuit Underpinnings**

In *Continental,* the owner of a drilling and production platform on the outer Continental Shelf directly sued the underwrit-

er of the shipowner whose vessel had allided with the platform off the coast of Louisiana. The Fifth Circuit first found that the occurrence was a maritime claim under the Extension of Admiralty Jurisdiction Act. 46 U.S.C.App. § 740. The Court specifically noted that the case was so treated by the shipowner and drilling platform owner alike as the platform owner filed a "libel in rem against the S/S Kimon in the Federal District Court in Texas and the Shipowner filed a petition for limitation of liability, in which the platform owner filed a claim and the shipowner filed a cross claim against the platform owner." *Continental,* 417 F.2d 1030, 1032 n. 10 (5th Cir.1969).[2] Thus, the court framed the issue, based on *Rodrigue,* as whether under OCSLA, the Louisiana Direct action statute had been adopted as federal law and made applicable to the case. *Id.* at 1033.

The Fifth Circuit specifically distinguished the *Continental* case from *Rodrigue,* noting that in *Rodrigue,* there was no federal law applicable and there was a state law covering the precise situation. *Continental,* 417 F.2d at 1035. Indeed, in the case at bar, this reasoning is equally compelling as to the straight application of Louisiana law. Mr. Moody is suing the owner of the platform and the owner of the allegedly defective compressor on an "artificial island" wherein Louisiana law is made applicable by operation of OCSLA and supported by the analysis of *Rodrigue.* To carve out the Direct Action Statute from the "surrogate federal law" based on Fifth Circuit jurisprudence where the Court was grappling with the intersection of other applicable federal law rather than a total void, does injustice to the dictates of *Rodrigue.*

Nonetheless, the Fifth Circuit in *Continental* found that the Louisiana Direct Action Statute was not adopted as federal law and made applicable to that action arising out of a collision between a foreign vessel and a drilling and production platform fixed on the Outer Continental Shelf in the Gulf of Mexico where there was no showing that admiralty remedies were in any way incomplete, inconvenient or unavailable, either substantively or procedurally. The Fifth Circuit reasoned that:

> while it does not offend the constitutional imperative for the uniformity of admiralty for the Louisiana Direct Action Statute to apply to maritime cases occurring on inland waters of Louisiana, quite different considerations enter in mandatorily applying that to some—but a very select class—cases on the Outer Continental Shelf. The class is select in the sense that it must somehow be physically-causally related to the structure('artificial island') without which Louisiana law is as irrelevant as that of Pakistan. This has nothing to do with so-called Louisiana interest.

*Id.* at 1037. Thus, because this accident occurred in the open seas, the Court found the applicable federal admiralty law sufficient. There were no "gaps" to fill, and the Fifth Circuit jettisoned any direct application of the Direct Action Statute as applicable as "surrogate" federal law in this circumstance.[3]

**2.** The Court noted in its opinion that the issue of the liability of the direct insurer in excess of the Shipowner's limited liability, was not an issue. Moreover, it should be noted that *Olympic Towing Corp. v. Nebel Towing Co.,* 419 F.2d 230, 237 (5th Cir.1969), *cert. denied* 397 U.S. 989, 90 S.Ct. 1120, 25 L.Ed.2d 396 (1970), had been decided which indicated that not only could the Direct Action Statute be used in a maritime claim but that "for a Louisiana inland based maritime occurrence the direct action Insurer has a direct liability beyond that of the shipowner." *Continental,*

417 F.2d at 1032 n. 7. *Olympic Towing* has been overruled to the extent that where a provision of the applicable policy fixes the maximum liability to that of the tug owner's judicially declared limitation of liability, that provision is valid. *Crown Zellerbach Corp. v. Ingram Indus., Inc.,* 783 F.2d 1296 (5th Cir. 1986).

**3.** In *Koesler v. Harvey Applicators, Inc.,* 416 F.Supp. 872, 874 (E.D.La.1976), Judge Rubin pointed out that in reality the Louisiana Direct Action statute had been applied and

In 1973, the Fifth Circuit faced another situation where there was a body of federal law applicable such that there was no need to apply "surrogate" federal/state law. In *Nations v. Morris*, 483 F.2d 577 (5th Cir.1973), an injured worker on an OCSLA offshore drilling rig who was covered under the LHWCA sued his allegedly negligent fellow employee and his employer's compensation insurer based on Louisiana law and its Direct Action Statute. The trial court granted summary judgment in favor of the defendants finding that the LHWCA was the exclusive remedy for plaintiff and that the LHWCA's grant of tort immunity to both the employer and the fellow employees of an injured worker pursuant to 33 U.S.C. § 933(i) is a non-personal defense which could be maintained by the employer's insurance carrier. *Id.* at 579. The Fifth Circuit affirmed for those same reasons and as a basis for its decision, that "we find the Louisiana Direct Action Statute to be inapplicable to causes of action based upon occurrences on artificial islands or structures on the Continental Shelf." *Id.*

■ This "holding" could be considered dicta as it was unnecessary for the Fifth Circuit to reach this issue; nonetheless, this declaration has been the linchpin for the district court cases that jettisoned the Direct Action Statute. However, this Court believes that read in the proper context, based on the factual underpinnings in that case, this finding is limited to instances where there is a federal body of law applicable, not just a wholesale renunciation of one part of what is surrogate federal law—the law of Louisiana. The Fifth Circuit in discussing the applicability of the Direct Action Statute to this case stated:

found not to be at odds with the need for uniformity in admiralty law. In *Sassoni v. Savoie*, 327 F.Supp. 474 (E.D.La.1971), the court permitted the application of the direct action statute to an injury arising beyond the territorial waters of the state. Also, certain Louisiana courts allow the application of the

Employee's contention that the Louisiana Workmen's Compensation act with its freedom to sue fellow employees is "applicable" as surrogate federal law is too frail a craft to venture to the Outer Continental Shelf. OCSLA declares, § 1333(a)(2), that the laws of the adjacent state shall apply "[to] the extent that they are applicable and not inconsistent," note 8 supra, and *Rodrigue v. Aetna Casualty & Sur. Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969), has charted our course in this area. As we said in *Continental Oil Co.*, the recurring theme of Rodrigue requires that "'applicable' be read in terms of necessity-necessity to fill a significant void or gap." [LHWCA] is clearly sufficient system and its provisions as to the liability of fellow employees must-along with the entire remainder of [LHWCA]—be the law for workers injured in connection with operations involving removal or development on natural resources from the outer Continental Shelf.

*Id.* at 585 (footnotes omitted). The Court continued its analysis of the applicability and the breadth of the LHWCA as a workers' compensation regime. It stated that Section 905(a) and 933(i) of the LHWCA "obliterates the rights at common, civil or maritime law against Employer and fellow employee." *Id.* at 587–88. In its final discussion and that section covering the third basis for its rejection of the Direct Action Section, subtitled "Unnecessary–Hence Inapplicable", the Fifth Circuit noted, "Here there is no gap-not even a tiny one." *Id.* at 589. The court concluded its analysis as follows:

*Rodrigue* has made it clear that maritime principles are inapplicable to injuries occurring to oil workers on the Out-

Direct Action Statute in Jones Act cases arising beyond the territorial limits of the state, where the policy was delivered here. *Id.* n. 4; *Trahan v. Gulf Crews, Inc.*, 246 So.2d 280 (La.App. 3d Cir.1971), *rev'd on other grounds*, 260 La. 29, 255 So.2d 63.

er Continental Shelf. However, we have just as comprehensive a body of law to regulate the liabilities of those who injure oil workers as the court had in Continental to regulate collisions of ships with platforms. Clearly the Longshoremen's and Harbor Workers' Act is a complete body of law, a legislative island unto itself. There is no need to bring aboard the state Direct Action Statute to cause liability to be fixed where Congress never intended it.

*Id.,* at 590. This language appears in the context of this case—an employee seeking to "oust" the exclusive provisions of federal law—the LHWCA—with surrogate federal/state law application. This Court believes that the holding in this case is limited to that situation. In the case at bar, the plaintiff is suing third-parties. No employer, no insurer of the employer or no co-employee is involved. This present suit simply is inapposite to *Nations.*

### Eastern District of Louisiana Cases

The first and most significant application of this line of cases is found in *Koesler v. Harvey Applicators, Inc.,* 416 F.Supp. 872 (E.D.La.1976). Judge Rubin wrote a very thorough and instructive opinion wherein he held that the Louisiana Direct Action Statute did not apply to a case involving a fixed platform in the Outer Continental Shelf even though the cause of action was based on the Jones Act. The facts of his case, however, are obviously distinguishable from the case at bar. Plaintiff was employed as a sandblaster working on the Outer Continental shelf and on a vessel. He was injured while working on the a fixed platform, and brought the suit under the Jones Act against his employer. He also joined under the Direct Action Statute his employer's insurer. The insurer filed a motion for summary judgment claiming

that Fifth Circuit law would not support the application of the Direct Action Statute to a case involving an injury on a fixed platform on the Outer Continental Shelf even though the cause of action was based on the Jones Act (and the Direct Action Statute had previously been applied in a straight maritime situation).

The *Koesler* court opined:

The Continental–Nations rule appears to anomalous. The direct action statute is applicable in cases involving two vessels where the maritime law is applicable; it applies to seaman's injuries on the sea and on dry land; its reach stops only at cases arising in fixed platforms, despite the fact that otherwise state law applies on the selfsame platform.

Nonetheless, Judge Rubin made clear that he was bound to find the Direct Action Statute inapplicable because in both in *Continental* and *Koesler,* maritime law was applicable. *Koesler,* 416 F.Supp. at 875–76.

■ In the case before the Court, maritime law is not applicable. Indeed, counsel for the defendants have not argued that there is some independent federal law that preempts the field such as the LHWCA or maritime law. Indeed, there is a yawning gap which requires the wholesale importation of surrogate federal law—the law of Louisiana [4] as the facts of this case now appear.

It is for all of these reasons this Court respectfully disagrees with the application of the *Continental-Nations-Koesler* decisions found in *Couvillion v. Nicklos Oil & Gas Co.,* 671 F.Supp. 446 (E.D.La.1987) and *Dunaway v. Jay Jay Well Service, Inc.,* 1989 WL 57126 (E.D.La. May 23, 1989). In *Couvillion,* the plaintiff was the

---

4. The Court notes that there are no allegations in the Answers of either defendants that the plaintiff might be considered a borrowed servant and as such have no cause of action against one of these parties. *Renois v. Norcen Explorer, Inc.,* 1998 WL 872502 (E.D.La. Dec.14, 1998) (Fallon, J.). In addition, it could be that under the facts of the case, the requirements of the Direct Action Statute have not been met. Those allegations, however, must be addressed in the context of a motion for summary judgment and not as here presented in a motion for leave to amend.

employee of Delta Catering, Inc. who slipped and fell in the kitchen of a Union Oil Company of California's offshore oil platform on the outer Continental Shelf. The location was being operated by Nicklos Drilling Company and Nicklos Oil and Gas Company. Plaintiff sued the Nicklos group and Union Oil. He later amended the complaint to add Lloyd's of London, Nicklos' insurer. Union then cross-claimed against Lloyd's claiming that pursuant to an indemnity agreement between Union Oil and Nicklos, Lloyd's was responsible for any liability of Union Oil. subsequently Nicklos was placed in involuntary bankruptcy by its creditors.

The *Couvillion* court, relying on *Koesler* and a less than sweeping analysis of this issue found in *Nesom v. Chevron U.S.A., Inc.*, 633 F.Supp. 55 (E.D.La.1984), found that the Direct Action Statute would not apply because the bankruptcy remedy merely "suspends" the remedy. It is not altogether clear whether perhaps the LHWCA might have been implicated in the decision as the court made this less than clear statement:

> Although *Nations* might be distinguished because it also involved a claim under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., the district court in *Koesler v. Harvey Applicators, Inc.*, 416 F.Supp. 872 (E.D.La.1976), rejected such a narrow interpretation of Nations. See 416 F.Supp. at 875. **It is instructive to note that Nations would apply here even if it were given only that narrow interpretation.**

*Couvillion*, 671 F.Supp. at 448 (emphasis added). This characterization of *Nations* is over broad and ignores the fact that the *Koesler* court arose in the context of a claim for Jones Act remedies where there was an extent body of federal law involved so that there were no "gaps."

In *Dunaway*, plaintiff was an employee of Dual Drilling Company who slipped and fell on a guide tower platform owned by Exxon Corporation ("Exxon") located on the outer Continental Shelf. Also working on the rig were employees of Jay Jay Well Service ("Jay Jay") whose insurer was Employers of Texas Lloyd's ("Employers"). Plaintiff sued Exxon, Jay Jay and Employers; the suit directly against Employers was founded on the Direct Action Statute through OCSLA. That court reviewed *Nations, Continental* and *Couvillion* and chose to follow the reasoning found in *Couvillion*. This court cannot do so.

In the case at bar, to the Court's knowledge and from the pleadings before it, there is no other federal law applicable to the case at bar. Thus, the Court must apply "surrogate federal law" which is the law of the state of Louisiana. To carve a portion of Louisiana law out where there is no other federal law applicable is simply illogical. For these reasons, the Court must reverse the decision of the magistrate judge and allow the amendment of the complaint to allow the direct actions against the insurers of Callon and Hanover.

**Hanover's Objections to the Inadequacies of the Allegations of the Amended Complaint**

Hanover contends that because plaintiff makes no allegations of fact that the policy was written in Louisiana or that the policy was delivered in Louisiana, his amended complaint must fail. While this fact is true, the Court will grant leave to further amend the complaint so that all of the prerequisites for the application of the Direct Action Statute might be properly alleged. If in the course of these proceedings it appears that the Direct Action Statute is inapplicable by its own operation, the Court will entertain a motion for summary judgment on that issue. Accordingly,

**IT IS ORDERED** that the Motion to Review Magistrate Judge's Order is **GRANTED** and leave is **GRANTED** to amend the Complaint; however, that Amended Complaint must include the nec-

essary factual allegations to properly invoke the Louisiana Direct Action Statute.